ANTHONY JEROME, Respondent, *v.* QUEEN CITY CYCLE COMPANY, Appellant

1. APPEAL — WHEN COURT OF APPEALS MAY REVIEW THE SUFFICIENCY OF EVIDENCE. Upon an appeal from a non-unanimous affirmance by the Appellate Division, the record may be examined in order to ascertain whether there is any evidence which, upon any reasonable view, will sustain a verdict, and when the undisputed facts, in connection with the testimony of the plaintiff, when supported by every inference that can be drawn therefrom, do not warrant a verdict in his favor, a question of law arises reviewable by the Court of Appeals.

2. MASTER AND SERVANT — JUSTIFICATION FOR DISCHARGE OF SERVANT. The discharge of a superintendent who had expressly agreed "to give his services" to his employer and to "devote his best efforts in the

faithful and efficient discharge of the duties of superintendent," and who was in charge of an extensive manufactory where 600 men were at work, is justified by his being absent for an entire day without permission and in defiance of orders, whether any actual injury to the business resulted or not, when his absence was for a private purpose, which was neither important nor urgent, but was merely to take counsel in order to protect himself by legal process from villification and abuse, which does not appear to have been actionable, by one of the employees, whom he had absolute power to discharge.

3. EXCUSE FOR DISOBEDIENCE OF ORDERS — QUESTION OF LAW. An excuse given to justify disobedience of orders by an employee who absents himself from work for an entire day, that he went to take counsel to prevent an employee, whom he had authority to discharge, from calling him names, does not present any question of fact for the jury, where the undisputed evidence shows that the master's order was reasonable, and that the conduct of the servant was unjustifiable.

4. RETENTION OF SERVANT AFTER KNOWLEDGE OF BREACHES OF DUTY. Retaining an employee after knowledge of his breaches of duty does not prevent their use as grounds of discharge, when the offense is repeated.

*Jerome* v. *Queen City Cycle Co.*, 24 App. Div. 632, reversed.

(Argued April 23, 1900; decided June 5, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 24, 1897, affirming a judgment in favor of plaintiff entered upon a verdict.

This action was brought to recover damages for an alleged wrongful discharge of the plaintiff, who had been employed by the defendant for the period of one year to act as superintendent of its bicycle factory at Lake View, about twenty miles from Buffalo. The defendant admitted that it discharged the plaintiff before the expiration of the term agreed upon, but alleged that the discharge was lawful on account of tardiness, absence and disobedience of orders.

By a written contract entered into by the parties on the tenth of October, 1895, the defendant agreed to employ the plaintiff as superintendent of its factory for one year from said date at a salary of $2,000, payable monthly. The plaintiff agreed to "give his services" to the defendant and to "devote his best efforts in the faithful and efficient discharge of the duties of superintendent," during the period and for

the compensation aforesaid. It was mutually agreed that the plaintiff should "have full control and discretion as to the employment and dismissal of all help properly engaged in said factory in any capacity."

On May 5th, 1896, the defendant through its president wrote to the plaintiff, who was a skillful pattern maker, to confine himself "to superintending the designing, pattern making and drafting in your department, and to such other duties and the execution of such other orders as may be specifically given you by the president. * * * Do not leave your duties during working hours without specific permission of the president. * * * Tardiness will not be permitted. You have left your duty for a number of hours at times recently and in three cases without any knowledge of the president, and in one case yesterday without his permission and in direct disobedience to his orders. When you desire to absent yourself you must apply to the president for permission, stating your reasons and abide by his decision. If any or all of the above conditions are not carefully and strictly observed and complied with, this will be considered sufficient cause for discharge."

Thereupon the plaintiff withdrew from the factory, and on the seventh of May, through his counsel, wrote the defendant that while he was willing "to comply strictly and conscientiously with the terms" of the contract, he would not consent to "the alterations" proposed. He offered to return and made tender of his services in accordance with the provisions of the contract, but declined to continue in the employment of the defendant under the instructions aforesaid. No reference was made to the charge of absence or tardiness.

The defendant replied disclaiming any intention to alter the contract, and insisting that its object was "to specify what services as superintendent we require of you; the notice does not require and was not intended to require of you the performance of any duties not included in the duties you agreed to perform * * *." The defendant withdrew "for the

45 .

present anyhow" its "notice of the 5th instant so far as it limits the duties required of you, although we do not admit any obligation on our part so to do," and asked the plaintiff "to come and try again to carry out your contract.   *   *   * We expressly refuse to waive any of our rights as they stood at and before the time of giving the notice.   With the understanding that such rights as we have are not waived, we again say, come to the factory upon receipt of this letter and try again."

The plaintiff then resumed work as before, but in a short time one of the employees at the factory named Fenton "called a meeting at North Evans," at which he denounced the plaintiff and called him a "liar, hypocrite and scoundrel." Soon after at a second meeting, presumably of the employees, Fenton again denounced him.   About May 23d the plaintiff told Mr. Fries, defendant's president, that he was going to Buffalo to take counsel in order to suppress "that fellow's villification and abuse and to protect" himself "by legal process."   Mr. Fries replied that if he absented himself "that day" for that reason he should consider himself discharged. The plaintiff, notwithstanding, went to Buffalo for the purpose aforesaid and was gone the entire day.   Before leaving he gave orders in relation to the work of the factory, in which 600 men were employed under his superintendence.   He told Mr. Wheeler, who was foreman of the machine department, that "he was going to Buffalo on some private business of his own and expected to be away all day;" that "he had been threatened with discharge if he left his business, and that he did not consider that he was tied down so that he could not go and look out for his own affairs; that he wished me to co-operate with Mr. Hailley, the foreman of the tool room, and do the best we could during his absence.   *   *   *   Furthermore he said, 'you are away on your own business at times, are you not?'   I said, 'no, sir; not without permission.'   He said he was threatened with discharge, but he was going."   No part of this conversation was denied, and the foregoing facts are either wholly undisputed or were testified to by the plain-

tiff himself, who on the day after he went to Buffalo was discharged for disobedience of orders.

The defendant introduced evidence tending to show that the plaintiff was absent without leave both before and after said correspondence, and that when warned not to repeat it or he would be discharged, he replied that " he considered he had a right to go to Buffalo or other places on his own private business." The plaintiff did not deny this, but said that he had no recollection of being away between May 15th, when he returned to work, and May 23rd, when he went to Buffalo, but he could not swear he was not. There was no evidence that anything went wrong at the factory during any of his absences.

When the plaintiff rested the defendant moved for a nonsuit upon the ground that it appeared affirmatively that the discharge   as justified, and at the close of the evidence it moved for the direction of a verdict in its favor upon the same ground, but each motion was denied and exception was taken. There was a verdict for the plaintiff; the judgment entered thereon was affirmed by the Appellate Division, without an opinion, and the defendant appealed to this court.

*John W. Ingram* for appellant. The trial court erred in submitting to the jury the question as to whether the defendant was justified in discharging the plaintiff from its employment. (*Edgecomb* v. *Buckhout,* 83 Hun, 168; *Forsyth* v. *McKinney,* 56 Hun, 1, 3; *Tullis* v. *Hassell,* 8 N. Y. S. R. 108.) The defendant was justified in discharging the plaintiff, and as this appeared from the undisputed facts, the court should have directed a verdict in defendant's favor, or granted the motion for a nonsuit. (*Arkush* v. *Hannan,* 60 Hun, 518; *Harrington* v. *F. Nat. Bank,* 1 T. & C. 361; *Gray* v. *Shepard,* 147 N. Y. 177; *Turner* v. *Mason,* 14 M. & W. 112; *Robinson* v. *Hindman,* 3 Esp. 235; *Ford* v. *Danks,* 16 La. Ann. 119; *Stoney* v. *F. T. Co.,* 17 Hun, 579; *Tullis* v. *Hassell,* 8 N. Y. S. R. 108; 22 J. & S. 391; *Edgecomb* v. *Buckhout,* 83 Hun, 168.) The court erred in instructing the jury

that the plaintiff was not required to state to the defendant his reasons for leaving his duty on the last occasion, and in disregarding the evidence of the defendant's witnesses on this point in the motion for a new trial. (*Turner* v. *Mason*, 14 M. & W. 112.`

*Loran L. Lewis, Jr.*, for respondent. The plaintiff, as a matter of law and upon the undisputed facts and inferences to be drawn therefrom, was justified in absenting himself on the day in question. (*Marden* v. *Dorthy*, 160 N. Y. 39; *Reed* v. *McCord*, 160 N. Y. 330.) The case was properly submitted to the jury for its determination. (Wood on Mast. & Serv. [2d ed.] 219, 230, 231; 14 Am. & Eng. Ency. of Law, 789; *Edgecomb* v. *Buckhout*, 83 Hun, 168; *Stokes* v. *Johnson*, 57 N. Y. 673; *Hackford* v. *N. Y. C. & H. R. R. R. Co.*, 53 N. Y. 654; *Mead* v. *Parker*, 111 N. Y. 259.)

VANN, J. The relation of master and servant, which existed between the parties, cast certain duties upon the plaintiff that he was bound to discharge, and the foremost was that of obedience to all reasonable orders of the defendant not inconsistent with the contract. Disobedience of such orders is a violation of law which justifies the rescission of the contract by the master and the discharge of the servant. (*Edgecomb* v. *Buckhout*, 146 N. Y. 332, 339; *Lacy* v. *Getman*, 119 N. Y. 109, 115; *Forsyth* v. *McKinney*, 56 Hun, 1; *Harrington* v. *First Nat. Bk.*, 1 T. & C. 361; *Tullis* v. *Hassell*, 8 N. Y. S. R. 108; *Spain* v. *Arnott*, 2 Stark. 227; *Callo* v. *Brouncker*, 4 C. & P. 518; *Amor* v. *Fearon*, 9 A. & E. 548; Wood's Master & Servant, 221, 225; Smith's Master & Servant, *139; 14 Am. & Eng. Encyc. 789; Chitty on Contracts [10th ed.], 628, 629.) After complaint had been made in regard to several absences without permission, the plaintiff desired to be absent for an entire day to attend to private business. He did not ask permission, but simply announced his intention to his employer, stating the reason, and was informed that if he absented himself that day, for that purpose, he would be dis-

charged.   He was not told that he could not leave at all, but, simply, that he could not leave on that particular day.   This was, in effect, a command not to leave his work on the day in question; but, notwithstanding, he did leave it, and thus willfully disobeyed the order of his employer.   He was at once discharged, and if said order was reasonable, under the circumstances, the discharge was in accordance with law; but if it was unreasonable, the discharge was in violation of law.

The plaintiff claims that this was a question of fact for the jury, and as they answered it in his favor, after affirmance by the Appellate Division, we cannot answer it in favor of the defendant.   As the judges of the court below do not appear to have been unanimous in their decision, we have the right to read the record in order to see whether there was any evidence which, according to any reasonable view, would sustain the conclusion of the jury.   (*Gannon* v. *McGuire*, 160 N. Y. 476; *Otten* v. *Manhattan R. Co.*, 150 N. Y. 395.)   If the undisputed facts, in connection with the testimony of the plaintiff, when supported by every inference that can properly be drawn therefrom, do not warrant the verdict, a question of law arises, which we can review.   Uncontradicted facts, with the logical deductions therefrom all pointing in the same direction, present a question of law for the court, and not a question of fact for the jury.   (*Griggs* v. *Day*, 158 N. Y. 1, 10; *Ostrom* v. *Greene*, 161 N. Y. 353, 357; *O'Brien* v. *East River Bridge Co.*, 161 N. Y. 539, 544.)

The construction of the contract is for the court exclusively. The plaintiff expressly agreed " to give his services" to the defendant and to " devote his best efforts in the faithful and efficient discharge of the duties of superintendent."   He impliedly agreed to devote his time to the work of his employer during business hours, unless he was sick, or some other emergency arose to justify his absence.   The defendant, in making the contract, did not abdicate its position as master nor waive control of its business.   The plaintiff was, in law, a servant, although of a high grade, with full control and discretion as to hiring and dismissing all the other servants.   In

other respects he was subject to the reasonable orders of his master, for there was nothing in the contract to relieve him from the duty of obedience required by law. He had charge of an extensive manufactory, where six hundred men were at work. The defendant had the right to manage its own business and to decide whether the services of the plaintiff were necessary at the factory on the day in question. It did so decide and he had no power to overrule the decision, for that would make the master and servant change places. He did not ask leave to go some other day and was not told that he could not go some other day, when the situation of the business, in the master's judgment, would permit it. It was unreasonable for the plaintiff, when employed to superintend extensive operations and many men, to take a day off at will, for a private purpose, regardless of the condition of the business or the wishes of his employer. There was no emergency to justify him in leaving important affairs, which he had been hired to look after, for a whole day, in defiance of orders. The defendant had a right to the skill and services during ordinary working hours, which he had agreed to give and for which it was paying him. There was no occasion for taking counsel in order to prevent one of the employees from calling him names, which were not actionable upon their face, nor otherwise so far as appears, because he had the absolute power to discharge the obnoxious man at once. It was not reasonable for him to abandon the work he had been employed to do for such a trifling cause, which as he admits, was purely personal.

The excuse given by him to justify his disobedience of orders presented no question of fact for the jury, for the law does not permit a servant to defy his master unless serious injury threatens him, his family or his estate. Courts will not permit juries to guess or speculate, when, from the undisputed evidence, it is apparent that the order of the master was reasonable and that the servant was guilty of insubordination. The inferences from the admitted facts all point one way. What variant inferences are permissible? Not that the

plaintiff obeyed orders, for it is conceded that he did not. Not that he was in danger of serious injury, for he had a summary remedy in his own hands which he could resort to at once without leaving his duties. Not that it was necessary to at once start a slander suit to protect his reputation, for no slanderous words had been spoken concerning him. Not that he went to Buffalo as superintendent, to consult the counsel of the company, for he did not so claim upon the trial. He went, as he stated, for personal reasons, to consult his own counsel upon a subject which was neither important nor urgent.

When the contract is properly construed we find no evidence to warrant the inference that the order of the master was unreasonable or the conduct of the servant justifiable. He had been absent without leave several times during a short period. The master by retaining him after knowledge of these breaches of duty did not prevent their use as grounds of discharge when the offense was repeated. (*Gray* v. *Shepard,* 147 N. Y. 177; *Arkush* v. *Hannan,* 60 Hun, 518.) After ample warning he persisted in disobedience and the master was not compelled to retain in its employment a servant who willfully violated its lawful orders. The absence, considering the nature of the business and the character of the duties, was not within the contemplation of the contract and was inconsistent with the object of the servant's engagement, which was to advance the master's interest. Whether it resulted in actual injury to the business of the defendant is not the question, for it had that tendency and would naturally have that effect in a large factory, where something was liable to occur at any moment which would require the presence of the superintendent. It was a violation of duty as matter of law, which justified the master in discharging. The action of the servant was not the result of a mistake, for he was told not to go, but was willful, and, indeed, it seems as if, encouraged by previous litigation with two different employers, he courted a discharge.

The contract and the undisputed evidence conclusively

established the right of the master to discharge, and the motion to direct a verdict for the defendant should have been granted. The judgment appealed from should, therefore, be reversed, but as further evidence may be given upon another trial we do not dismiss the complaint, but grant a new trial, with costs to abide event.

O'BRIEN, BARTLETT, HAIGHT, MARTIN and LANDON, JJ., concur; PARKER, Ch. J., not voting.

Judgment reversed, etc.