MARTHA HUTCHINS, Respondent, *v.* PENNSYLVANIA RAILROAD COMPANY, Appellant.

1. CARRIERS — LIABILITY OF RAILROAD COMPANY FOR LOSS OF BAGGAGE DELIVERED TO AND LOST ON CONNECTING LINE.   The liability of a railroad company arising from an agreement to furnish to a passenger through transportation to a point beyond its own line, for a loss of his baggage delivered to a connecting line in good order but lost thereon, is not limited by conditions printed in fine type on a ticket with coupons attached, providing, among other things, that in checking baggage beyond its line the company acts as agent only and restricting its own baggage liability to wearing apparel of a specified value, unless the passenger has knowledge of such conditions and expressly agrees to them, or the circumstances are such that he is chargeable with notice thereof and must be deemed to have assented thereto.

2. SAME.   Where, therefore, in response to a request for such through transportation, the company's ticket agent delivers such a ticket to the passenger without notifying him of the conditions and requesting his subscription thereto, and the latter neither reads nor knows of them, and it does not appear that he was accustomed to traveling or that he knew about the nature of coupon tickets or what roads belonged to the company's system, a contract for through transportation from the point of departure to the place of destination is established, with its attendant liability, which cannot be limited by conditions of which the passenger cannot be held chargeable with notice and to which, therefore, he did not assent.

*Hutchins* v. *Pennsylvania R. R. Co.,* 92 App. Div. 612, affirmed.

(Argued March 17, 1905; decided April 11, 1905.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered March 8, 1904, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry Galbraith Ward* and *Norman B. Beecher* for appellant.   The trial judge erred in directing a verdict for the plaintiff, because : The presumption of law was that the trunk was not opened while in the defendant's custody ; and that

fact was positively proved. (*Smith* v. *N. Y. C. R. R. Co.*, 43 Barb. 225; *Springer* v. *Westcott*, 2 App. Div. 295; *Fasshender* v. *W. T. Co.*, 26 N. Y. S. R. 112; *Strong* v. *L. I. R. R. Co.*, 91 App. Div. 442; *M. & E. R. Co.* v. *Culver*, 75 Ala. 578.) The trial judge erred in directing a verdict for the plaintiff, because: The presumption of law was that the defendant was not liable for the trunk after leaving its custody; and the ticket on which the plaintiff traveled provided that this should be the case. (*Milnor* v. *N. Y. & N. H. R. R. Co.*, 53 N. Y. 363; *Condict* v. *G. T. Ry. Co.*, 54 N. Y. 500; *Kessler* v. *N. Y. C. & H. R. R. R. Co.*, 61 N. Y. 538; *Auerbach* v. *N. Y. C. & H. R. R. R. Co.*, 89 N. Y. 281; *Talcott* v. *Wabash R. R. Co.*, 159 N. Y. 461; Hutchinson on Carriers [2d ed.], § 578; *Myrick* v. *M. C. R. R. Co.*, 107 U. S. 102; *Rawson* v. *Penn. R. R. Co.*, 48 N. Y. 212; *Marmorstein* v. *P. R. R. Co.*, 13 Misc. Rep. 32.)

*Maurice V. Theall* for respondent. The verdict determines the fact that the contract was for through transportation and custody of baggage. (*Rawson* v. *P. R. R. Co.*, 48 N. Y. 212; *Woodruff* v. *Sherrard*, 9 Hun, 322; *Madan* v. *Sherrard*, 73 N. Y. 329.) The defendant having agreed to furnish through transportation is bound by the acts of the agents chosen by it to carry out its contract. (*Monell* v. *N. C. R. R. Co.*, 67 Barb. 531; 16 Hun, 585; *Jennings* v. *G. T. R. R. Co.*, 52 Hun, 227; *Saltzman* v. *N. Y., L. E. & W. R. R. Co.*, 65 Hun, 448; *Isaacsen* v. *N. Y. C. & H. R. R. R. Co.*, 94 N. Y. 278; *Fasy* v. *I. N. Co.*, 77 App. Div. 470; *Jennings* v. *G. T. R. R. Co.*, 127 N. Y. 446; *Nulnor* v. *N. Y. & N. H. R. R. Co.*, 53 N. Y. 363; *Kessler* v. *N. Y. C. & H. R. R. R. Co.*, 61 N. Y. 538; *Auerbach* v. *N. Y. C. & H. R. R. R. Co.*, 89 N. Y. 281.)

VANN, J. In May, 1900, the plaintiff applied to an agent of the defendant for through transportation from Brooklyn, New York, to Carlsbad, New Mexico, "over the Pennsylvania Railroad." The agent handed her what is called "a continuous passage, through ticket," and she paid him the

price asked therefor.    At the same time the defendant gave her a check "on that ticket" for her trunk to Carlsbad, New Mexico, but when the trunk was delivered at that place the lock was broken and a portion of the contents was missing.

At the head of the ticket was printed in somewhat conspicuous type "Pennsylvania Railroad Company.    Good for one first class passage to" Fort Worth, Texas.    Beneath and in smaller letters were the words ' "Subject to the following contract," which were directly followed by a "Notice" to the effect that it was "a penal offense for the purchaser or holder of this ticket to sell, barter or transfer the same for a consideration in the State of Texas, and this ticket or any unused part thereof is redeemable at any ticket office in Texas, of a railway company over which this ticket or any unused part thereof reads, if presented within ten days after the right to use the same has expired by limitation of time as stipulated thereon."    Next below in very fine print were eight paragraphs, numbered consecutively, of which the first and last were as follows: "1st. That in selling this ticket and checking baggage this company acts as agent only and is not responsible beyond its own line.    *    *    *.

"8th. That baggage liability is limited to wearing apparel not exceeding $100 in value."    At the bottom of the ticket was the following: "I hereby agree to all the conditions of the above contract" and beneath were two blanks, one headed "Signature," and the other, "Witness."    Attached to the ticket were five coupons, each headed in conspicuous type "Issued by Pennsylvania Railroad Co.," which in all except the last was followed by the words, in much smaller type, "on account of," some other railroad named.

Another ticket with two coupons attached for a passage from Fort Worth to Carlsbad was delivered to the plaintiff with the one already described.    The second ticket was in all other respects a substantial duplicate of the first and the coupons accompanying were in the same form as the others, except that each named, in fine print, a different railroad.

Neither ticket was signed by the plaintiff and she was not

asked to sign either. She read neither ticket nor any coupon and never even took them from her purse where she put them as they were delivered to her, except when the conductor asked for her fare. Her attention was not " called to what the ticket contained " and she " did not know. what it contained." She was never informed by what means or lines the defendant was to furnish the transportation that she asked for, nor how it intended to perform its contract with her. She knew what she wanted and asked for it, but the defendant gave her something of its own manufacture, without notifying her what it was or that it was not what it knew she supposed she was purchasing.

During her journey she changed cars at St. Louis, where she took the train pointed out to her by the conductor, which, as she thought when she testified as a witness, was on the Iron Mountain railroad. It did not appear that she was accustomed to traveling or that she knew anything about the nature of coupon tickets or what roads belonged to the defendant's system. She was somewhat advanced in years and simply asked for a through ticket to Carlsbad, New Mexico, over the Pennsylvania railroad, paid the price and took what was given her.

In behalf of the defendant evidence was given by men in its employment tending to show that it accounted to seven independent railroad corporations named in as many coupons attached to the tickets for their share of the entire cost of transportation, and that the plaintiff's trunk was delivered in good order at St. Louis to the Iron Mountain and Southern Railway Company, one of such roads. Where her trunk was broken open did not appear.

At the close of all the evidence the defendant moved for the direction of a verdict in its favor, but the court directed a verdict in favor of the plaintiff, neither party having asked to go to the jury upon any question. The effect was the same as if both parties had moved to direct and neither had asked to go to the jury. The exception to this direction is the only one appearing in the record.

If any question of fact was presented by the evidence, it was resolved in favor of the plaintiff by the course pursued at the trial without objection on the part of the defendant. (*Sutter* v. *Vanderveer*, 122 N. Y. 652; *Smith* v. *Weston*, 159 N. Y. 194.) We should, therefore, examine the record in order to see whether there is any evidence which, upon any reasonable view, will sustain the verdict directed and if there is it is our duty to affirm; otherwise to reverse. (*Jerome* v. *Queen City Cycle Co.*, 163 N. Y. 351.)

I think the evidence warranted the court in finding, by the direction of a verdict for the plaintiff, that the contract was for through transportation from the point of departure to the place of destination. The defendant failed to conclusively establish a limitation by special contract of its common-law liability as a carrier. (*Jennings* v. *Grand Trunk Ry.*, 127 N. Y. 438.) The form of the ticket suggests a proposition to make such a contract, for there was appended thereto the sentence, "I hereby agree to all the conditions of the above contract," with a blank for the signature of the purchaser and another for the signature of the selling agent as a witness. The proposition was not accepted by the plaintiff for she did not sign the ticket nor have any reason to believe she was expected to. She did not assent to the proposition nor agree to any limitation of liability on the part of the defendant, by merely accepting and using the ticket, for she did not read it, or know its contents, nor was she told to read it or requested to sign it. She asked for through transportation to Carlsbad, New Mexico, over the defendant's railroad, and when the ticket was delivered to her without request or remark by its agent, she had a right to presume she was getting what she asked for and what she paid for. A railroad ticket may be a contract or a voucher, and which the ticket of the plaintiff was depended upon the inference to be drawn from what was said and done when she bought it, as well as on the form of the ticket and coupons. A ticket is no notice of conditions concealed therein by fine print, unless the attention of the holder is in some way directed to them. There is no presumption that a

passenger assents to the terms of a complex ticket, unless he has notice of what they are. (*Rawson* v. *Penn. R. R. Co.,* 48 N. Y. 212; *Madan* v. *Sherard,* 73 N. Y. 329.)

The situation of the plaintiff was quite unlike that of Mr. Cullom, the purchaser of a ticket in the *Talcott* case, as he was an old traveler and familiar with all the facts. He "knew what a coupon ticket meant, and he intended to purchase a ticket that would take him over the West Shore and another connecting line." He knew that the Wabash railroad, from which he bought the ticket, did not extend to New York, his place of destination, and that its eastern terminus was at Detroit. In addition to knowing that he would have to use other lines, he "knew that besides the coupons for the different portions of the journey there was a printed contract at the head of the ticket, but he did not read it until after the accident." Even in that case we held that the nature and extent of the contract was a question of fact, but as the evidence was conflicting and the referee had found for the defendant we affirmed as to the second cause of action. As to the first cause of action, however, we reversed, because a nonsuit was granted by the referee, while we held that he should have passed upon the question in relation to an alleged contract for through transportation as one of fact. (*Talcott* v. *Wabash Railroad Co.,* 159 N. Y. 461.)

While that case was decided by a divided vote and no opinion in its entirety received the assent of a majority of the judges, the judgment pronounced shows that it was necessarily held as is stated above. The leading authorities were cited and reviewed, so that further effort in that direction is unnecessary. We regard the *Talcott* case as controlling, and, without further discussion, affirm the judgment appealed from, with costs.

O'BRIEN, J. (dissenting). This appeal presents a question of law concerning the defendant's liability for loss or injury to the plaintiff's baggage at some point beyond the terminus of the defendant's road and where it was being transported to

the place of destination by another, independent and connecting railroad. At the close of the evidence in the case the defendant moved for the direction of a verdict in its favor, and the result of this motion was that the learned trial court directed a verdict for the plaintiff, and to this ruling and direction the defendant excepted. The affirmance of the judgment, entered upon this direction, does not appear to have been unanimous, and hence all the questions in the case are open to review in this court.

There does not seem to be any dispute whatever about the facts. On or about the 31st of May, 1900, the plaintiff purchased a through ticket from Brooklyn, in this state, to Carlsbad, New Mexico. The plaintiff procured this ticket from a clerk in the office of the Erie Railroad Company, where she called for a through ticket to Carlsbad and paid the fare to that place. The ticket sold and delivered to the plaintiff was for passage over the defendant's railroad to Pittsburg and from thence to the point of destination over five other independent and connecting roads. The plaintiff's ticket thus purchased contained on its face the following statement: " That in selling this ticket and checking baggage this company acts as agent only and is not responsible beyond its own line. * * * That baggage liability is limited to wearing apparel not exceeding one hundred dollars in value." The plaintiff started upon her journey over the defendant's railroad, taking with her a trunk containing her baggage, which was delivered to the defendant and checked through to the place of destination. It appears that when the plaintiff arrived in Carlsbad, New Mexico, her trunk arrived on the same train, but it was found that the lock was broken and several articles of the value of one hundred and sixty dollars were missing, and the verdict directed by the court in the plaintiff's favor was for this amount. The plaintiff was given two separate tickets, containing separate coupons, for transportation over the road of each separate carrier, and these tickets contained the provisions already quoted; and it was shown that the defendant accounted to the other five independent railroad

corporations for their shares of the whole cost of transportation, in accordance with the coupons attached to the tickets. It was shown, and there is no dispute about the fact, that the plaintiff's trunk was delivered in good order to the Iron Mountain and Southern Railway Company, one of the independent roads described in one of the coupons upon the plaintiff's ticket, running west from St. Louis. In other words, the record shows that the loss of the plaintiff's baggage, for which she recovered in this action, must necessarily have occurred while it was being transported over some of the independent roads west of St. Louis, and that it did not occur during the passage over the defendant's railroad.

The question, therefore, is whether upon these facts the defendant can be held liable for the loss or abstraction of the plaintiff's baggage. It was shown, and the fact is not disputed, that when the trunk left the custody and control of the defendant it was in good order, and it seems to me that under such circumstances it is the settled law in this state that the defendant is not liable either for any accident happening to the passenger or any loss or injury to her baggage beyond the terminus of its own line. (*Milnor* v. *N. Y. & N. H. R. R. Co.*, 53 N. Y. 363; *Condict* v. *Grand Trunk Railway Co.*, 54 N. Y. 500; *Kessler* v. *N. Y. C. & H. R. R. R. Co.*, 61 N. Y. 538; *Auerbach* v. *N. Y. C. & H. R. R. R. Co.*, 89 N. Y. 281; *Talcott* v. *Wabash R. R. Co.*, 159 N. Y. 461.) In the case of *Condict* v. *Grand Trunk Railway Co.* (*supra*) the principle of liability is stated as follows: "In England it is held that a railroad company receiving goods marked for a particular place beyond its terminus, without expressly limiting its responsibility, undertakes *prima facie* to carry them to their destination, and is to be regarded as a carrrier throughout the entire route. But in this and other States of the Union a different rule prevails. It is here held that the receipt of goods marked for a place beyond the terminus of the carrier's route does not import a contract to carry them to their final destination. Such a contract will not be inferred from the simple

13

address of the goods. There must be other facts and circumstances sufficient to show a special contract." The whole question of liability was fully discussed in the more recent case of *Talcott* v. *Wabash Railroad Company* (*supra*). As I understand that case the majority of the court concurred in only one proposition and that related to the loss of baggage which occurred on a connecting road. There were three opinions in the case, in each of which the question involved in the present case was discussed. In the opinion of Judge GRAY the law as to the liability of connecting carriers is traced from the earliest cases in this state, and his conclusion is as follows: "The clear doctrine of these cases is that a carrier's responsibility to the passenger does not extend beyond the operation of its own road and cannot be made to so extend except a special agreement be shown upon satisfactory evidence." The general law on this subject is stated in Hutchinson on Carriers (2nd ed. § 578): "But when the passenger has received from the carrier a number of such coupon tickets, one for his passage over the route of the first and others as passports over the lines of succeeding carriers, the rule applicable to common carriers of goods, by which a through bill of lading and the payment of through freight would make the first or contracting carrier responsible for their safe transportation throughout their whole route to destination, does not apply, and such tickets are held not to import a contract on the part of the first carrier, from whom they are received, to be responsible for the carriage of the passenger beyond its own line. In such cases the first carrier is considered rather in the light of an agent for the succeeding carriers than as undertaking for their faithful discharge of their duty, and the coupons as in the nature of separate tickets on behalf of the successive carriers, and binding upon them in the same manner as if issued by themselves. * * * And the same rule of construction is applied when the question is as to the responsibility for the loss of the passenger's baggage, the carriage of which is regarded as a mere incident of the carriage of the passenger." The learned author has cited numerous

cases in support of the proposition stated in the text, which, when examined in the light of the cases already cited in this court, would seem to establish the proposition that the defendant in this action could not, upon the facts established, have been held liable for the plaintiff's loss.

The principle of liability in such cases was thus stated by the Supreme Court of the United States : " The general doctrine, then, as to transportation by connecting lines, approved by this court, and also by a majority of the state courts, amounts to this : that each road, confining itself to its common-law liability, is only bound, in the absence of a special contract, to safely carry over its own route and safely deliver to the next connecting carrier, but thát any one of the companies may agree that over the whole route its liability shall extend.   In the absence of a special agreement to that effect, such liability will not attach, and the agreement will not be inferred from doubtful expressions or loose language, but only from clear and satisfactory evidence." (*Myrick* v. *Michigan Central R. R. Co.*, 107 U. S. 102, 107.)   In a subsequent case that court, reviewing the earlier decisions, stated the law in these words : " It is the duty of the carrier, in the absence of any special contract, to carry safely to the end of its line and deliver to the next carrier in the route beyond.   This rule of liability is adopted generally by the courts in this country, and is in itself so just and reasonable that we do not hesitate to give it our sanction." (*Pennsylvania R. R. Co.* v. *Jones*, 155 U. S. 333.)   It was held in the same case that in the absence of a special agreement on the part of a carrier to extend its liability beyond its own line, such liability will not attach ; and such agreement will not be inferred from doubtful expressions or loose language, but it must be established by clear and satisfactory evidence.   In the case at bar the plaintiff purchased through a clerk in the Erie Railroad Company, at a general passenger office in Brooklyn, two tickets from the defendant, she paying the entire charge for transportation and receiving a check for her trunk to be delivered at destination.   It is quite true that a railroad

may contract to carry a passenger and his baggage beyond the terminus of its own line, and in such cases it will be liable for damage to passengers' baggage while in the custody of a connecting carrier. The facts of this case, instead of establishing an obligation on the part of the first carrier to be responsible as carrier to final destination, establishes, by the law of this state, the contrary, viz., an intention to act as carrier on its own line only, and as forwarder to deliver to succeeding carriers. When, as in this case, the ticket consists of a series of coupons, each covering transportation over the road of a separate carrier, and when it provides that those coupons are delivered by the first carrier on account of the separate carriers, and that the first carrier acts only as agent for them, and it further appears that the first carrier accounts to the succeeding carriers for their share of the transportation money, it furnishes evidence of the highest character that the parties intended to affirm and not to contradict the presumption that the law itself raises in the premises. On this feature of the case it seems quite sufficient to quote the language of Judge Gray in the *Talcott* case: " Whether a ticket is a contract or not depends upon circumstances. Where a person receives, upon paying his fare, a simple ticket to the point of his destination, it may well be that it is the mere token of the carrier's contract to carry him and his baggage to that point. * * * But here the ticket was complex and, assuming that it contained no contract between the parties, it gave notice to the holder that the carrier did not undertake any responsibility beyond its own line and was only acting as agent for connecting carriers. It guarded against implications from its sale of a ticket through to New York. What could it have done more effectually, in that respect, and what legal principle forbade it from doing it in that way? If the passenger is not to be held to some contractual obligation, which is printed upon the ticket handed to him, there is no reason why he should not be chargeable with knowledge of any reasonable notice upon it which guards against any misconception, to the effect that the carrier is undertaking to be

responsible for occurrences upon the lines of connecting carriers, over which it cannot exert any control.  *  *  *  It is not necessary that the printed matter upon ‚the ticket should constitute a contract, in order that the defendant should have its benefit.  It was a form of notice to the holder that it was not intended to assume any other responsibility than what would ordinarily belong to it as a carrier between its terminal points."  In the *Auerbach Case* (*supra*) this court, commenting upon the nature and effect of the passenger's ticket, said : " A separate contract was made for a continuous passage over each of the roads mentioned in the several coupons.  Each company through the agent selling the ticket made a contract for a passage over its road, and each company assumed responsibility for the passenger only over its road.  No company was liable for any accident or default upon any road but its own.  This was so by the very terms of the agreement printed upon the ticket." ·

There is no opinion or anything to be found in the record to indicate the theory upon which judgment was directed against the defendant in this case.  It cannot, I think, be asserted that there was any special contract in this case on the part of the defendant to carry the plaintiff and her baggage safely from Brooklyn to Carlsbad.  There is no special contract alleged and no special contract was shown at the trial.  The fact that the plaintiff called for a through ticket and received the ticket described in the record, with the baggage check, does not show or tend to show the existence of any special contract.  The clerk, in response to her request for a through ticket, gave to her the only form of ticket that he had, and it would seem to be a very strained construction of the transaction to say that there was a meeting of minds and an actual contract made between the plaintiff and the defendant, to the effect that the latter should transport the plaintiff and her baggage safely from Brooklyn to Carlsbad, or that there was a stipulation on the part of the defendant to become responsible for any loss of baggage upon any of the various roads over which it was necessary for the

plaintiff to pass in order to reach her place of destination. It was said by this court in a recent case that "The right of a party to have a verdict directed in his favor on uncontradicted evidence presents merely a question of law and that question of law is expressly reserved for our consideration both by our Constitution and by the provisions of the Code, except in the single case where the cause is submitted to the jury and the verdict rendered by it unanimously upheld by the Appellate Division." (*Second National Bank* v. *Weston*, 172 N. Y. 250, 254.) The plaintiff cannot sustain the judgment in this case without establishing at least one of two propositions: (1) That under the law of this state a carrier who issues a through ticket to a passenger becomes liable for the loss of baggage upon an independent connecting road beyond its own terminus; or (2) that by the delivery of a through ticket to a passenger, with coupons attached, securing a passage over various independent and connecting roads, the first carrier thereby enters into a special contract with the passenger to become accountable for the loss of baggage on any of the various connecting roads described in the ticket. It seems to me that neither of these propositions could have been deduced from the established or undisputed facts of this case; and so it must follow that the judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., BARTLETT and HAIGHT, JJ., concur with VANN, J.; WERNER, J., concurs with O'BRIEN, J.; GRAY, J., absent.

Judgment affirmed.