WILLIAM A. WHITE & SONS, Respondent, *v.* U. S. FOOD PRODUCTS CORPORATION, Appellant.

First Department, December 22, 1922.

Principal and agent — action to recover rental brokerage — contract provided that plaintiff would be entitled to brokerage on unexpired leases existing at termination of contract — property was sold and plaintiff consented to cancellation of contract — res gestæ — prejudicial error to reject contract of sale containing provision that it was made subject to plaintiff's contract — directed verdict improper where inferences must be drawn from facts.

In an action to recover rental brokerage it appeared that the contract between the owner of the building and the broker provided that on the termination of the contract the broker would be entitled to receive the usual rental brokerage for the unexpired term of any lease or renewal thereof on the premises; that a contract of sale was made by the owner which contained a provision that the purchaser would take the property subject to the existing contract with the broker, and that the broker wrote to a broker employed by the purchaser that it was willing to cancel its contract.

*Held,* that it was prejudicial error to exclude the contract made by the purchaser, in which it assumed the contract between the broker and the owner, which was offered in evidence by the defendant, for it was a part of the *res gestæ.*

The broker had been informed of the provision in the contract of sale for its benefit and while not binding on it in the sense that it could not have been forced to continue the employment as agent for the purchaser, yet the plaintiff could have enforced it against the purchaser.

If the broker wished to retain its claim for brokerage it should have annexed that as a condition to its consent to the cancellation of its contract.

It is error for the court to direct a verdict where it is necessary for the court to draw inferences from controverted facts.

FINCH, J., dissents, with opinion.

APPEAL by the defendant, U. S. Food Products Corporation, from a judgment of the Supreme Court in favor of the plaintiff,

entered in the office of the clerk of the county of New York on the 17th day of November, 1921, upon the verdict of a jury rendered by direction of the court, and also from an order, entered in said clerk's office on the 12th day of December, 1921, denying defendant's motion for a new trial made upon the minutes.

*Alexander & Green* [*Clifton P. Williamson* of counsel; *Edward W. Bourne* with him on the brief], for the appellant.

*Lind & Pfeiffer* [*Alexander Pfeiffer* of counsel; *Seth V. Eltinge* with him on the brief], for the respondent.

PAGE, J.:

The action is to recover $4,544.20 as rental brokerage under a written agreement. On October 22, 1919, the defendant appointed the plaintiff its " agent for the purpose of renting, managing and operating the property known as 56, 58 Pine Street, New York City, including the making of repairs and collecting of rents therefrom." The portions of the agreement that are material to this case are as follows: " The agent shall be entitled to receive as its compensation for making collections, managing, operating and renting the property and attending to repairs the sum of three per cent. on all collections made for the account of the owner. * * * In case the agent hereunder shall at any time cease to act as the agent of the owner then at the time of ceasing to act as such agent, the agent shall be entitled to receive the usual renting brokerage for the unexpired term of any lease, or leases or renewals thereof on said premises. The owner may terminate this employment on the first day of any month on thirty days' written notice to Wm. A. White & Son." The agreement is not for a definite term nor does it contain any clause designed to limit in any way the agent's power to terminate the employment. Pursuant to this agreement the plaintiff acted as agent for the defendant until on or about March 1, 1921. Sometime in the early part of the year 1921 the plaintiff heard that the defendant had entered into a contract to sell the building 56–58 Pine street. On February 19, 1921, the plaintiff wrote the following letter to the defendant: " In accordance with our contract with you for the management of 56 and 58 Pine Street, there will be due the renting brokerage for the unexpired term of any lease or renewals made under our management. We have prepared a statement of these brokerages and are enclosing it herewith." Inclosed therein was a detailed statement of the unexpired term of the various leases with the amount of annual rent and the brokerage computed thereon, which in the aggregate amounted to $4,544.20. On February 24, 1921, M. A. Holzinger, secretary of the defendant, wrote to plaintiff acknowledg-

ing receipt of the above-mentioned letter and statement, and further stated: " The writer would be pleased if you will kindly call upon him at your convenience in order to talk this matter over with you personally." In response to this letter Mr. Hilton, the president of the plaintiff, called on Mr. Holzinger, who stated to Hilton that he did not think the defendant was obligated to pay the brokerage in view of the fact that in the contract for the sale of the property the purchaser, Price, Waterhouse & Co., had agreed to take over and assume the contract that the defendant had with the plaintiff. Mr. Hilton was in the court room during the trial but was not called as a witness by the plaintiff. Thereafter Hilton had some dealings with Charles F. Noyes Company, real estate brokers, the details of which were not given in evidence, as a result of which the plaintiff wrote to Charles F. Noyes Company on February 26, 1921: " We understand that Price, Waterhouse & Co., the purchaser of 56–58 Pine Street, have placed the property with you for management and that title will pass on or about March 1st. This letter is to let you know that we have no objection to your rendering rent statements to the tenants on March 1st, and assuming the management of the property from that date, if and provided this arrangement is satisfactory to the U. S. Food Products Company and to Price, Waterhouse & Co. You may tell both that we are willing to consider our contract cancelled as of March 1st." On February 28, 1921, Charles F. Noyes Company wrote sending a copy of the plaintiff's letter to the defendant.

The contract of sale of the premises by the defendant to Price, Waterhouse & Co., dated February 3, 1921, which contained an agreement to take the property subject to " the existing management contract with William A. White & Sons," was offered in evidence but excluded on the ground that as the plaintiff was not a party to the contract it was not binding upon it. To this ruling the defendant's counsel duly excepted and the contract was marked for identification. The exclusion of this contract was prejudicial error. It was clearly a part of the *res gestœ*. The plaintiff had been informed of this provision in the contract for its benefit and while not binding on the plaintiff, in the sense that the plaintiff could not have been forced to continue the employment as agent for the purchaser, yet the plaintiff could have enforced it against the purchaser, under the principle laid down in *Lawrence* v. *Fox* (20 N. Y. 268). The taking over the property subject to the management agreement was a part of the consideration for the sale. If this contract had been received in evidence the situation when plaintiff sent the letter stating that Charles F. Noyes Com-

pany might tell the defendant and Price, Waterhouse & Co. that "we are willing to consider our contract cancelled as of March 1st," would have been proved to have been that the plaintiff had a valid subsisting contract with the defendant enforcible against the purchaser, and with knowledge of this fact the plaintiff, after some dealing with Charles F. Noyes Company, voluntarily consented to the latter taking over the management of the property, and that the defendant and the purchaser be notified that the contract should be canceled as of March first. In accordance with this notice the defendant gave its assent. If the plaintiff wished to retain its claim to brokerage it should have annexed that as a condition to its consent. The defendant had the right to rely on the fact that the agreement was canceled when it gave its assent to Price, Waterhouse & Co. making an agreement with Charles F. Noyes Company.

With the record of the trial as it was made, in my opinion, it was error for the court to direct a verdict. In order to do so the court had to draw an inference from the facts that when the plaintiff consented that the agreement should be canceled, it did not intend that the word should be construed according to its accepted meaning, but that it meant that the plaintiff was willing that the defendant should terminate the employment on March first, thereby waiving the provision for a thirty days' written notice, but that otherwise the contract was to remain in full force and effect. If it is necessary to draw inferences from the facts proved, it is the province of the jury and not of the judge to draw them.

The judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

CLARKE, P. J., DOWLING and GREENBAUM, JJ., concur; FINCH, J., dissents.

FINCH, J. (dissenting):

It is submitted that the trial court committed no error. The plaintiff had a written agreement giving it the right to commissions on the unexpired leases in the event that the contract was terminated by the owner. The defendant sold the premises, and the new owner availed itself of the right to terminate the contract by employing its own agents. Under the contract between plaintiff and the defendant, plaintiff was entitled to thirty days' notice of termination. Clearly as a courtesy to the new agents, the plaintiff informed them it had no objection to their assuming management of the property as of March first, provided that arrangement was satisfactory to the defendant (from whom the plaintiff theretofore had demanded payment of commissions on the unexpired terms of

the leases), and that they might tell the defendant and the new owner that plaintiff was willing to consider the contract canceled as of that date. It is to be noted that the plaintiff did not in any way attempt to abrogate the contract *ab initio,* but expressly stated that the cancellation should take place from the first of March, whereupon, by the terms of its written contract, the plaintiff became entitled to commissions on the unexpired terms of the leases which commissions it is undisputed amount to $4,544.25. How is the defendant absolved from its obligation to pay these commissions? No consideration is shown for its release, and an estoppel cannot be claimed, since there is no showing of any change of position on the part of the defendant in reliance upon any act of the plaintiff. The contract of sale between the defendant and the new owner was made without notice to the plaintiff and before any of the correspondence or conversations on the subject of commissions or cancellation. When the plaintiff's president called on Mr. Holzinger, the defendant's secretary, Mr. Holzinger practically admitted the commissions to be a liability and gave as an excuse to avoid its payment that the defendant had made a contract with the new owner for the benefit of the plaintiff. Such excuse was, of course, wholly ineffectual, as the rights the plaintiff had against the defendant under its written contract could not be defeated by the defendant seeking, without the consent of the plaintiff, to substitute the liability of another for its own. The trial court, therefore, could do nothing else than direct a verdict. (*Jerome* v. *Queen City Cycle Co.,* 163 N. Y. 351, 357, where the court said: " Uncontradicted facts, with the logical deductions therefrom all pointing in the same direction, present a question of law for the court, and not a question of fact for the jury.")

In recognition of this principle is the provision of section 457a of the Civil Practice Act (as added by Laws of 1921, chap. 372): " The judge may direct a verdict when he would set aside a contrary verdict as against the weight of the evidence."

It was not error to refuse to admit in evidence the contract between the defendant and Price, Waterhouse & Co., the new owner. The issue was on the obligation between the plaintiff and the defendant, and a contract between the defendant and a third party would not be relevant to this issue. Even conceding that the plaintiff might enforce such part of said contract as inured to his benefit, the effect of such contract in so far as the plaintiff is concerned could not be more than to give plaintiff an election or option to adopt the same, and all the evidence shows that plaintiff did not so elect. Even assuming, however, that the

contract should have been admitted, the error is not sufficient to have any effect on the result and, therefore, should be disregarded. (Civ. Prac. Act, § 105.)

The judgment appealed from should be affirmed.

Judgment and order reversed and new trial granted, with costs to appellant to abide the event.