Paul REILLY, Plaintiff,

v.

POLYCHROME CORPORATION and Sun Chemical Corporation, Defendants.

No. 93 Civ. 3553 (JSM).

United States District Court, S.D. New York.

Jan. 23, 1995.

Frederick D. Berkon, Leader & Berkon, New York City, for defendants.

Gayle S. Sanders, Shustak Jalil Sanders & Heller, New York City, for plaintiff.

### MEMORANDUM OPINION AND ORDER

MARTIN, District Judge:

#### I. *Introduction*

This case arises out of the termination of plaintiff's employment with defendant Polychrome. Plaintiff, Paul Reilly, alleges that his refusal to report to work when instructed to do so was not a material breach of his contract and that he was therefore fired without cause. He further contends that Polychrome has unfairly withheld salary payments and a severance package under his written contract. Defendants have moved for summary judgment. For the reasons explained below, defendants' motion is granted.

#### II. *Background*

Plaintiff Reilly worked for Polychrome for fourteen years. Before his termination, plaintiff was Vice President and General Manager of Polychrome Americas, a division of Polychrome responsible for Polychrome's operations in the United States. Berkon Aff., Exh. D at 8, 12–13. In this capacity, Reilly was the most senior executive officer responsible for Polychrome's operations in the United States, and he reported directly to the Chief Executive Officer of the company.

On June 12, 1980, Reilly entered into a written employment agreement with Polychrome (the "Agreement"). Berkon Aff., Exh. D at 13–16, Exh. G. The Agreement automatically renewed for successive one-year terms ending on December 31 of each year unless the Agreement was terminated at the expiration of any term by either party on six months written prior notice. Berkon Aff., Exh. G at ¶ 2.

The Agreement included the following provision:

> [Polychrome] hereby employs [Reilly] to render exclusive and full-time services to [Polychrome] ... as an executive employee and, in connection therewith, to perform such duties as he shall reasonably be directed to perform by the Board of Directors, the Executive Committee of the Board of Directors or such senior executive officers of [Polychrome] as the Board or the Executive Committee may designate.

Berkon Aff., Exh. G. at ¶ 1.1. The Agreement further provided:

> In the event of material breach by [Reilly] in the performance of his obligations under this Agreement, [Polychrome] may at any time by written notice to [Reilly] terminate the Term of [Reilly's] employment hereunder.

Berkon Aff., Exh. G at ¶ 4.3. Under the Agreement, if Reilly is terminated as the result of a material breach, Polychrome is not obligated to pay him any further salary or severance compensation from the date of termination. Berkon Aff., Exh. G at ¶¶ 5.1–5.2.

The present dispute stems, in part, from a disagreement between plaintiff and defendants regarding a possible temporary loca-

tion change of Reilly's principal office. The Agreement expressly provided that Reilly's consent was required before any change of his principal office could be made beyond thirty-five miles of Yonkers, New York. Berkon Aff., Exh. G at ¶ 1.3. In late 1992, Reilly and Mel Ettinger, then Polychrome's Chief Executive Officer, discussed the potentiality of Reilly's temporary relocation to Columbus, Georgia. Although the details are not relevant to the purposes of the present motion, it is clear that Reilly resisted such a move.

Reilly met with Ettinger several times in early January to discuss the possible relocation. In the context of his objection to such a move, plaintiff offered voluntarily to leave Polychrome upon the promise of a salary and severance package. Berkon Aff., Exh. D. at 420, 427–29, 446–51. Defendants rejected such an offer. At a meeting on January 15, 1993, after a futile attempt by Reilly to secure an agreement with Ettinger, Reilly gave Ettinger a letter stating that the Agreement required his consent to a move of his principal location of business and that he did not consent to a move to Columbus, Georgia. Berkon Aff., Exh. D. at 518–26; Exh. E. at 221–25; Exh. H. Reilly then informed Ettinger that he intended to take a vacation the following week. Ettinger advised Reilly that he was not authorized to take this vacation and instructed him not to do so. Berkon Aff., Exh. D at 526, 535–37; Exh. E at 225, 227–30.

Reilly deliberately ignored his superior's instructions and did not report to work at his office on January 18, 1993. Berkon Aff., Exh. E. at 242–43. Reilly took vacation time and worked at home. Berkon Aff., Exh. D at 557–58. Berkon Aff., Exh. D at 555, 566. During this time, plaintiff did not seek medical assistance or take any medication for stress. Berkon Aff., Exh. D at 555–56.

During the afternoon of January 18, Ettinger had a letter hand delivered to Reilly. Berkon Aff., Exh. D at 566–67; Exh. E at 255; Exh. I. The letter informed plaintiff that his intention to take a vacation was without the consent of either Ettinger or Thomas Bittner, who became President and Chief Operating Officer of Polychrome on January 1, 1993, and was in direct disregard of Ettinger's instruction as the Chief Executive Officer of Polychrome. The letter informed Reilly that his actions were a material breach of his obligations and were grounds for terminating the employment agreement. Berkon Aff. Exh. I.

Reilly also stayed home the following day, January 19. Ettinger wrote Reilly a second hand-delivered letter on that day, which notified Reilly that if he did not report to work before the close of business on January 20, Polychrome would terminate his Agreement. Berkon Aff., Exh. D. at 578; Exh. E. at 277. By way of facsimile letter on the same day, Reilly disputed Ettinger's right to deny Reilly permission to take his vacation and contested the need for him to be in the office. Berkon Aff., Exh. D at 579–80.

Reilly did not report to work on January 20, and his employment was terminated as of 5:00 p.m. on that date. Berkon Aff., Exh. D at 581–90, 613–15; Berkon Aff., Exh. L.

## III. *Discussion*

### A. *Summary Judgment Standard*

■■■ Summary judgment is proper when there is no genuine issue of material fact and, based upon facts not in dispute, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). All inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). In order to defeat a motion for summary judgment, the factual dispute must be both material and genuine. In determining genuine facts, the shadow of a doubt is insufficient; the Court must be satisfied that evidence exists upon which the finder of fact could reasonably find for the party opposing the motion. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986).

### B. *Plaintiff's Material Breach*

The primary issue in this case is whether plaintiff's refusal to obey his superior's in-

struction to report to work constitutes a "material breach" of his employment agreement. Because plaintiff's refusal in this case does constitute a "material breach," defendant was justified as a matter of law in dismissing plaintiff without severance.

■■■ It is "unquestioned" that the general rule is that "an employee's willful refusal to obey the reasonable instruction of his employer is grounds for discharge." *Central Alaska Broadcasting, Inc. v. Bracale,* 637 P.2d 711, 713 (Alaska 1981); *see* Restatement (Second) of Agency § 385(1) (1958). The right of the employer to control the details of performance of the employee's duties is the central element in an employer-employee relationship. *Magnuson v. Smith & Saetveit, P.C.,* 722 P.2d 1020, 1022 (citation omitted) (Colo.App.1986). Thus, an employee's refusal to obey "strikes at the very heart of the contractual relationship existing between an employer and his employee." *Central Alaska,* 637 P.2d at 713.

■ Defendants' motion is strongly supported by the holding of the New York Court of Appeals in *Jerome v. Queen City Cycle Co.,* 163 N.Y. 351, 57 N.E. 485 (1900). In that case, the Court held that an employee materially breaches his contract when he disobeys the employer's instruction to report to work. In the absence of serious injury or emergency, an employee who disobeys such an instruction is "guilty of insubordination" and has violated the contract as a matter of law. *Id.* at 358, 57 N.E. 485.

### 1. *Plaintiff's Disobedience of a Supervisor's Reasonable Order was a "Material Breach"*

■ The keystone issue for purposes of the present motion is whether the instruction that Reilly report to work was reasonable. Because plaintiff was not excused from compliance with the order by reason of personal emergency, his failure to report to work constituted a legitimate basis for defendants' action.

Plaintiff argues, and the undisputed facts suggest, that it was not necessary for plaintiff to be present at the company's year-end closing. Nonetheless, this excuse falls short of the standard. That plaintiff's presence was not required does not necessarily also mean that his presence was not desirable or that the order was inherently unreasonable. Rather, Ettinger's order that the Vice President and General Manager of Polychrome's United States operations attend the year-end closing seems eminently reasonable.

During oral argument on the motion, plaintiff's counsel argued that defendants' motive for plaintiff's termination was a disputed issue of material fact. Defendants' motivation is of no consequence to this motion, however. "The mere fact that a reasonable order which has been given by an employer to his employee is distasteful to the latter and given in bad faith for the purpose of getting rid of him does not justify a refusal to comply with it." 5 Am.Jur.2d § 55 (citing *Development Co. of Am. v. King,* 161 F. 91 (2d Cir.1908)). Thus, the purpose of defendants in giving plaintiff the instruction is not important; the Court need only determine that the instruction was reasonable.

### 2. *Plaintiff's Disobedience was Unjustified*

■ In opposition to the motion, plaintiff argues that Reilly was a high-level executive and therefore had considerable discretion in his actions toward his employer. Although it is generally accepted that "[t]he higher one rises in his employment, the greater is the extent of his discretion in determining the time and extent of an absence," Arthur Linton Corbin, 3A Corbin on Contracts § 677 (1960), it cannot be disputed that the general principles regarding the employee's duty of obedience govern executive or supervisory employees as well as those in subordinate positions, 53 Am.Jur.2d § 49. The obligation to obey all reasonable instructions of the employer is a "fundamental duty" of the employee, and "[t]he fact that an employee holds a position of authority over others, involving the exercise of executory and supervisory powers, does not relieve him form the duty of obedience to orders of the superiors." 53 Am.Jur.2d § 54. This duty insures "the right of the master to manage his business as he pleases." *Pollack v. Danbury Mfg. Co.,* 131 A. 426, 428, 103 Conn. 553 (1925).

Corbin on Contracts is instructive:

The employee's absence may be wilful and in defiance of the employer's express command; if so, it will probably create a situation that is more damaging to the employer's business and to the morale of the persons engaged therein. In such case, the employer is likely to be held justified in discharging the disobedient employee without regard to other factors. On the other hand, ... though intentional on the part of the employee, the circumstances may justify him in thinking that his absence will be unimportant and do little or no harm. In such cases, it is customary for the employer to be sympathetic and to condone the absence.

§ 677 (citations omitted). Although plaintiff contends that his absence was unimportant to the closing, the context of his actions belies any attempt to trivialize his absence. Plaintiff was well aware that his direct superior had instructed him to report to work, and his absence continued for three days despite defendants' letters notifying him of his impending dismissal if he failed to report to work. Plaintiff claims that personal stress and his child's welfare were factors leading to his decision, yet it is clear that plaintiff's decision was a calculated strategy based upon the state of affairs at that time. In fact, plaintiff acknowledged in deposition that he came to the decision in conjunction with his counsel. Reilly Dep. at 517. These additional considerations cannot justify plaintiff's disregard of a reasonable order. Plaintiff's decision to stay home, intended to provoke his termination by Polychrome, exceeded the bounds of his discretion by any reasonable standard.

Plaintiff's final argument is that he was defending his contractual rights. In *Rudman v. Cowles Communications, Inc.*, 30 N.Y.2d 1, 330 N.Y.S.2d 33, 280 N.E.2d 867 (Ct.App.1972), the Court of Appeals held that an employee was justified in disobeying his orders where he was merely defending his contractual rights with the employer. *Id.* at 40, 280 N.E.2d 867. Unlike in *Rudman*, however, in this case plaintiff was not being demoted or asked to do something that would permanently change his duties as delineated in his contract. Plaintiff's portrayal of his temporary relocation as a definitive,

permanent change of his principal business location is no more than an attempt to fabricate a material breach of the Agreement by Polychrome and is insufficient to demonstrate a genuine issue of fact.

### IV. *Conclusion*

For the above reasons, defendants' motion for summary judgment is granted.

**SO ORDERED.**