### DRESSER v. CANADIAN PAC. RY. CO.

(Circuit Court of Appeals, Seventh Circuit. May 6, 1902.)

#### No. 848.

1. CARRIERS OF PASSENGERS—CONSTRUCTION OF CONTRACT—AGREEMENT FOR THROUGH TRANSPORTATION.

Plaintiff, desiring transportation to Dawson City, paid to the agent of defendant railroad company in Chicago $362, for which he received tickets for rail transportation to Seattle, and an order on defendant's agent at that place for a ticket from there to Dawson City on a certain steamship. The order stated its value at $300. When plaintiff arrived at Seattle and presented the order, defendant's agent went with him to the office of a steamship company, and paid $300 for a ticket on the designated vessel. This was a contract ticket signed by the steamship company and plaintiff, and containing certain limitations. Held, that no contract by defendant, as carrier, to transport plaintiff through from Chicago to Dawson City could be implied from such transaction, and, in the absence of evidence of an express contract to that effect, defendant could not be held liable for a delay occurring after plaintiff left Seattle.

2. SAME.

A casual statement by defendant's agent in Chicago at the time of the purchase of the ticket and order, but not shown to have been made prior to the purchase, and which was no part of the consideration on which the purchase was made, that plaintiff would reach Dawson City before the close of navigation, did not constitute a contract by defendant to act as through carrier, or to transport plaintiff to his destination before the close of navigation.

**3. APPEAL—QUESTIONS PRESENTED BY RECORD—EXCLUSION OF EVIDENCE.**
    To support an assignment of error based on the exclusion of evidence, the bill of exceptions must state the substance of the evidence excluded, as required by rule 11 of the circuit court of appeals, that its materiality may appear.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

The declaration of plaintiff in error charged that defendant was a common carrier of passengers from Chicago, Ill., to Dawson City, Northwest Territory; that on August 4, 1897, defendant accepted him as a passenger, and agreed to transport him from Chicago to Dawson City before the end of September, 1897; that defendant carried him only to Tanana, a mining camp on the Yukon river nearly 1,000 miles below Dawson City; that he was compelled to spend the winter there, and did not reach Dawson City until May, 1898; that he suffered damages by loss of time, exposure, etc. At the conclusion of the evidence the court directed the jury to return a verdict for defendant. The assignment of errors questions the court's action in directing the verdict, in excluding evidence of a conversation between plaintiff and a ticket clerk, in admitting evidence for defendant, and in ruling on the measure of damages. In August, 1897, defendant and other railway companies maintained offices at 232 Clark street, Chicago. On August 3d plaintiff called at 232 Clark street. Placards were hanging there, advertising some steamship company, stating that passengers would reach Dawson City before the close of navigation on the Yukon, and naming $300 as the price of transportation from the Pacific Coast. Other placards announced that transportation could be procured at that office from Chicago to Dawson City. Several clerks were behind the counter. Plaintiff inquired of one of them, who was not shown to be an agent of defendant, the rates to Dawson City, and was told. He was asked to give the entire conversation with the clerk, but the court sustained defendant's objection. The next day a Mr. Sexton, on behalf of plaintiff, called and bought of Mr. Elsworthy, agent of defendant, for $362, three papers. The first was an ordinary token ticket, over the Chicago, Milwaukee & St. Paul Railway from Chicago to St. Paul. The second was a coupon contract ticket, over the Soo Pacific from St. Paul to Portal, over the Canadian Pacific from Portal to Huntington Junction, and over the Seattle & International from Huntington Junction to Seattle. The third was an order as follows:

"Canadian Pacific Railway.

"Chicago, 4 August, 1897.

"Canadian Pacific Agent at Seattle, Washington: On surrender of this order, deliver to bearer one first-class unlimited ticket from Seattle to Dawson City, Northwest Territory, by way of steamship Humboldt from Seattle, 13th August, 1897.                J. Francis Lee.

"Notice. This order must be presented at the ticket office above indicated on or before 13th August, 1897, and exchanged for ticket to destination."

On the back of this appeared:

"Value, $300. Favor Mr. Van S. Dresser. Berth reserved for Mr. Dresser by Mr. W. R. Calloway, general passenger agent, Minneapolis. To be exchanged at Canadian Pacific Railway office, Seattle, Washington. Good only for one passage on steamship Humboldt from Seattle, Washington, August 13, 1897. Canadian Pacific Railway, August 4, 1897; office card, Chicago."

Mr. Sexton disclosed to Mr. Elsworthy that he was acting for plaintiff, but said nothing to the effect that he came to carry out negotiations had the day before between plaintiff and some clerk; nor does it appear that Mr. Elsworthy, agent of defendant, knew of plaintiff's call the preceding day, or of his conversation with a clerk. Mr. Sexton's testimony on direct examination was substantially this: "I simply asked for the ticket and

¶ 3. See Appeal and Error, vol. 3, Cent. Dig. § 2905.

purchased it. Then the agent said that plaintiff would reach his destination before navigation closed." On cross-examination he said: "I purchased the ticket. That is all I remember. I simply went in and paid the money and took the ticket. I remember of making a remark to the clerk that he [plaintiff] would go through to his destination. That was simply a casual remark made at the time I bought the ticket. I have no distinct recollection as to whether it was before or after I purchased the ticket."

On plaintiff's arrival at Seattle, he presented the order to defendant's agent there, who went with him to the office of the agent of the Seattle & Yukon Commercial Company, and paid $300 for a ticket on the steamship Humboldt from Seattle to Dawson City. This was a contract ticket, signed by the steamship company and by plaintiff, in which certain limitations upon the steamship company's liability for delay were included. Plaintiff embarked on the steamship Humboldt, whereon this ticket was honored, and on this part of his journey arose the only grievances of which he complains.

Samuel B. King, for plaintiff in error.

E. C. Lindley, for defendant in error.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Plaintiff bases his action upon the claim that the defendant, as a common carrier, undertook to transport him from Seattle to Dawson City. Defendant might have contracted to act as principal in carrying plaintiff to Dawson City, in which event the steamship company would have been defendant's agent in executing defendant's undertaking, or might have acted as the steamship company's agent in selling its tickets and contracting with plaintiff for carriage, or might have undertaken for plaintiff to procure for him a ticket and contract from the steamship company. Any of these courses would be lawful, in the absence of charter restrictions; and the act would be a representation of power, of which the disproof, if permissible, would have to come from defendant. But the evidence fails to disclose an express contract, either written or oral, under which defendant agreed to act as carrier between Seattle and Dawson City. What engagement is implied from the facts and circumstances? Mr. Sexton, for plaintiff, purchased of defendant an order drawn by defendant's agent at Chicago on defendant's agent at Seattle, directing the latter to deliver to plaintiff, on his presenting and surrendering the order, a ticket to Dawson City on the steamship Humboldt. On the back the value of the order was stated to be $300. The order is indefinite, in that it does not disclose the owner and operator of the steamship, and declare in which of the three possible capacities the defendant was acting. But if defendant owned and operated the steamship, defendant could have issued through its Chicago agent its own tickets for passage thereon. If the steamship was owned and operated by a different company, and if there were arrangements between the two companies whereby defendant was entitled to sell steamship tickets, either as principal or agent, defendant could have had tickets at its office in Chicago as easily as at Seattle. If, however, there were no traffic arrangements between the two companies, and if defendant had no steamship tickets at any of its offices, the only thing defendant could do at Chicago would be to take the price

of the steamship company's ticket from the traveler, and give him an order on defendant's agent at Seattle for a ticket, and then at Seattle have the agent take an equal amount of defendant's money, and go to the steamship company and buy the traveler a ticket. And this is exactly what was done. The occurrences at Seattle were some days later than those at Chicago. But no oral contract of defendant as principal carrier from Seattle to Dawson City appearing in evidence, and the order being silent, the acts of the parties in fulfilling the order may be looked to for its interpretation. And the interpretation that defendant simply engaged to turn over to plaintiff at Seattle a ticket under which the steamship company should be carrier is in harmony with the record of what took place at Chicago. Plaintiff saw in defendant's office a placard advertising some steamship company, and offering transportation from the Pacific Coast to Dawson City for $300. He noticed other placards stating that transportation from Chicago to Dawson City could be procured at that office. No attempt is made to show the full wording of any of these placards. Statements touching their contents fail to show that defendant was offering to carry passengers to Dawson City. Plaintiff paid $362. But the amount was not unapportioned. Sixty-two dollars was for carriage by rail. Three hundred dollars was the value of the order; that is, the amount it took to buy a steamship ticket from Seattle to Dawson City.

The cases of Quimby v. Vanderbilt, 17 N. Y. 306, 72 Am. Dec. 469, and Williams v. Same, 28 N. Y. 217, 84 Am. Dec. 333, are not in point. The defendant in those cases advertised in the press and in bulletins in his office "Vanderbilt's new line between New York and San Francisco. The only through line via Nicaragua." There was positive evidence of an oral contract between the parties to carry plaintiff the entire distance, for which he paid the gross sum of $250. It was held that the delivery to him of three separate token tickets was not inconsistent with the oral contract.

The weight of authority seems to be that the mere act of selling tickets of other transportation companies does not make the selling company liable as principal. 25 Am. & Eng. Enc. Law, 1086, and notes. But it is unnecessary to express any opinion on that question, for defendant simply purchased a ticket for plaintiff, and the evidence does not establish any broader undertaking.

If the ticket was not "unlimited," or if the plaintiff accepted it under protest, his ground of complaint would be that defendant had not delivered the article it had agreed to. But that would not prove that defendant was principal in a contract to carry plaintiff from Seattle to Dawson City.

Plaintiff's grievances grew out of the fact that he did not reach Dawson City before the end of September. Even if there was any evidence to show that defendant contracted, as principal, to carry plaintiff to Dawson City, there is no evidence tending to prove that defendant agreed to do so before the close of navigation. The statements on the placards were made by the steamship company. The conversation between Mr. Sexton and Mr. Elsworthy on that point was merely casual. Mr. Sexton is unable to say that the remark

was made before the transaction of purchasing the tickets and order was completed. It certainly was not a promise in consideration of which any part of the $362 was paid.

Error is predicated on the court's refusal to permit plaintiff to state a conversation between himself and a ticket clerk the day before Mr. Sexton purchased the tickets and order. The clerk was not shown to be an agent of defendant. Mr. Sexton did not bring the matter to the attention of Mr. Elsworthy when the latter sold the tickets and order. The assignment of errors fails to state the substance of the evidence rejected, as required by rule II (31 C. C. A. cxlvi, 90 Fed. cxlvi). The record does not disclose what was expected to be elicited by the question. Patrick v. Graham, 132 U. S. 627, 10 Sup. Ct. 194, 33 L. Ed. 460; Ladd v. Mining Co., 32 U. S. App. 93, 14 C. C. A. 246, 66 Fed. 880. The rule that the bill of exceptions must show the materiality of rejected evidence is not merely a technical one, for it would be a hardship on defendant in error and an imposition on the trial court if a judgment were reversed to let in evidence that could not have any bearing on the result. What evidence was introduced by defendant, and what the proper rule for measuring damages might be, are matters that become immaterial, in view of plaintiff's failure to make out a case.

The judgment is affirmed.