HAUSE *v.* STANDARD ACCIDENT INSURANCE CO.

INSURANCE—WAIVER OF CONDITIONS—AGE LIMIT.

Though an insurer against accident had printed on the back of its card policy a regulation that it would not insure persons over 65 years of age, it was liable on a policy for the accidental death of an insured policy-holder of 66 years of age whose attention was not called in any way to the restriction,

and who was induced to purchase the insurance by advertising matter that contained no reference to an age limit; receipt of the premium and failure to inquire decedent's age, with want of knowledge on his part that such restriction existed, operated as a waiver of the rule.

Error to Lenawee; Chester, J.  Submitted June 17, 1912.  (Docket No. 53.)  Decided October 1, 1912.

Assumpsit by Franc C. Hause, executor of the estate of John Hause, deceased, against the Standard Accident Insurance Company upon a policy of accident insurance. Judgment for plaintiff.  Defendant brings error. Affirmed.

*Keena, Lightner, Oxtoby & Oxtoby*, for appellant.

*Smith, Baldwin & Alexander*, for appellee.

OSTRANDER, J.  Plaintiff's intestate, a man 66 years old, at Adrian, Mich., July 26, 1909, after purchasing a railroad ticket of a railroad ticket agent and leaving the ticket window, returned to the window a moment or two before taking the train and asked the agent for a two days' accident insurance policy.  He designated no company or form of policy, and, without any oral representation by either, the agent issued a post card accident policy of the defendant company, and was paid 50 cents for it.  Displayed in the station waiting room, over or near to the window where tickets were sold, was a metal advertising card, on the margin of which, in large type, was the following:

Send Home a POST-CARD ACCIDENT POLICY Issued By The "STANDARD" of Detroit, Mich.

The Policy Goes Home.  The Protection Goes With You.

RATES

25c Per Day

10 days $2.00

15 days $3.00

30 days $4.50

Each One Stamped Ready to Mail.

In the center of this advertising card, in small type, was a *fac simile* of the obverse or face side of the post card policy.  The policy was printed on a card, ready for mailing, in form as follows:

[Face.]

Reg. No.
  129

Agency No.
  02350

               8
Hour: ____ a. m.
           7–26
Date: ____ 1909.

Hour: ____ p. m.

| | |
|---|---|
| 1 | Day |
| | .25 |
| 2 | Days |
| | .50 |
| 3 | Days |
| | .75 |
| 4 | Days |
| | 1.00 |
| 5 | Days |
| | 1.25 |
| 6 | Days |
| | 1.50 |
| 10 | Days |
| | 2.00 |
| 15 | Days |
| | 3.00 |
| 30 | Days |
| | 4.50 |

Post Card Accident Policy.
John Hause, Clinton, Mich.

The Standard Accident Insurance Company, of Detroit, Mich., hereby insures the individual who purchases this ticket in person and whose name is entered upon the *stub* hereof, bearing even number and date herewith, and made part of this contract, against loss of time resulting from bodily injuries received during the term of this insurance and effected solely by external, violent, and accidental means, which shall, independently of all other causes, immediately and continuously disable the insured, subject to all the conditions hereinafter contained.

A. If such injuries shall, independently of all other causes, within 90 days result in death, the Company will pay $2,500 to the executors, administrators or assigns of the insured.

B. If the insured be a man and such injuries shall wholly and entirely disable and prevent the insured from actually performing or engaging in any and every kind of occupation, and if such injuries shall at the same time compel the insured to remain continuously within the house and be subject to the personal and continuous attention at his house of a surgeon in good standing, the Company will pay the insured for such disablement at the rate of $12.50 a week for a perod not exceeding 52 consecutive weeks.  If such injuries shall not disable the insured as aforesaid, but shall disable and

[Reverse.]

prevent the insured from actually performing some one or more necessary important daily duty or duties pertaining to his occupa-

tion, the Company will pay a weekly indemnity of $5.00 a week during the continuance of such partial disablement for not exceeding 26 consecutive weeks. In no case shall the indemnity payable under this contract for both total and partial disability exceed 52 consecutive weeks.

C. If the insured be a man, and such injuries are sustained while riding as a passenger and being actually within any railway passenger car using steam, electricity or cable as a motive [power, by reason of the wrecking of said car, then the principal sum or weekly indemnity payable under clauses "A" and "B" shall be double the respective sums named therein as those to which the insured shall be entitled under the terms of the ticket. These double benefits shall not apply to any woman.

D. This ticket does not insure any person under 18 or over 65 years of age, nor any woman except against death only, nor any person employed on any public conveyance while on duty, nor any person bereft of reason, sight or hearing, nor any person maimed, crippled or deformed, nor any person suffering from hernia or any other disease or bodily infirmity or disorder in any form.

E. This ticket is issued by the Company and accepted by the insured with the understanding and agreement that no benefits will be paid for injuries resulting fatally or otherwise, received under or in consequence of any of the following conditions: (1) While on any conveyance not provided for the transportation of passengers, or while on a locomotive, freight car or caboose used for passenger service; or while entering or leaving, or trying to enter or leave, any moving conveyance; or while on the right of way or bridge of any railway; or (2) while, or in consequence of being, or having been, affected by, or resulting, directly or indirectly, wholly or partly, from intoxicants, anæsthetics, narcotics, sunstroke, freezing, vertigo, sleep-walking, fits or any other disease or bodily or mental infirmity or disorder, in any form, either as a cause or effect, or medical or surgical treatment or operation; or from gas, poisonous substances, poison, or anything consciously or unconsciously, voluntarily or involuntarily, accidentally or otherwise taken, absorbed, administered or inhaled; or (3) while hunting, fishing, or on exploring expeditions, or under any circumstances from firearms of any kind or from explosives; or (4) from voluntary over-exertion, wrestling, lifting, racing, competitive games, or voluntary or unnecessary exposure to danger, or when inflicted upon the insured by himself or any other person, or received by the insured while insane or inflicted by the insured upon himself while insane; or (5) for disappearance, or in any case where there is no visible mark of violence impinging upon the body of the insured, the body itself in case of death not to be considered such mark.

F. Unless a written notice shall be given to said 'Company at its home office, Detroit, Michigan, within ten days thereafter, of any accident or injury for which claim is to be made, with full particulars thereof, and full name and address of the insured, all claim therefor shall be forfeited. Any such notice given to any agent of this Company shall not be deemed notice given to said home office. Unless direct and positive proof of death or duration of disability, which shall give full information of the manner of receiving the accidental injuries, and full information describing such injuries, shall also be furnished to said Company at its said home office, by the insured, or his legal representatives, within two months from the time of death or termination of disability, all claims based thereon shall be forfeited. Legal proceedings for recovery hereunder shall not be brought until after three months from the date of filing such proofs at this Company's home office, nor brought at all unless commenced within six months from time of death or termination of disability. Indemnity for disabling injuries shall be payable at the end of period of disability only.

If the limitations of time for notice of injury, proof of claim or for legal proceedings herein contained, differ from the statutory provisions in relation thereto of the State in which the ticket is sold and delivered, it is agreed that such statutory provisions shall supersede such limitations in this contract.

G. Insurance on any one person under this Company's accident ticket is limited to one ticket for $2,500 with $12.50 weekly indemnity, exclusive of the sums named in clause "C." The weekly indemnity to be paid shall, however, in no case exceed the average weekly earnings of the insured. Indemnity in excess of such limits shall be void and the premium paid for such excess shall be returned to the insured on demand. Should claim be made for death under this ticket, upon the insured, whose average weekly earnings were less than $12.50 per week, then the Company shall be liable for only such proportion of $2,500, or $5,000 under clause "C" as the case may be, as such weekly earnings shall bear to $12.50. If the insured held any other accident insurance in addition to this insurance, this Company's liability hereunder shall not exceed such proportion of the death benefit or weekly indemnity as this insurance shall bear to the combined accident insurance in all companies.

H. Any medical adviser of the Company shall be allowed, as often as he may require, to examine the person or body of the insured, and make post mortem examination at his discretion, in respect to the alleged injury or cause of death, and any refusal on the part of the insured, or legal representatives of the insured, to permit either of such examinations, shall cause a forfeiture of all claims under the ticket.

I. This insurance covers only injuries received within the limits of the United States, Canada, Newfoundland, Mexico, Hawaiian Islands, West Indies and Bermuda, and while traveling as a passenger on a regular passenger or mail line steamer, coasting along or between such limits; but does not cover injuries sustained in any part of Alaska or the British possessions in North America north of the sixtieth degree of north latitude, or in any of the territories of the United States acquired since the first day of January, 1897, except as above noted.

The stipulations and conditions of this contract cannot be expressly or impliedly waived or altered in any degree by any representative of the Company.

This ticket is good for the number of days canceled by a continuous line drawn by the selling agent across space for such term on left-hand margin of ticket and right-hand margin of stub, and according as the ticket is dated in the a. m. or p. m. space, it is good from the next 12 o'clock *including* *also* the time from such hour until said noon or midnight.

LEM W. BOWEN, President.

E. A. LEONARD, Secretary.
Series C, Feb., 1908.

On the next day plaintiff's intestate was accidentally killed. Being advised of the death and of the date of the birth of the policy holder, defendant denied liability, relying upon clause D of the policy. Plaintiff brought suit, and in her amended declaration, in the second count, she pleads a part of the policy form printed in the said advertisement as clauses A and B, alleging "that by this advertisement, statement and quotation of policy, seen and understood" by the insured "the said defendant held itself out as agreeing that the foregoing was the contract and policy, and upon this" plaintiff's intestate "relied when he purchased said insurance," and that failure of the agent to inquire about the age of the applicant and the issuing of the policy and acceptance of the premium was a waiver of the provisions of clause D. In the third count she alleges that her intestate knew about the policy and the terms and conditions thereof what he was able to read from the advertisement printed in coarse print on metal cover over the ticket window of the Wabash Railroad in Adrian, and could read only the coarse print.

Plaintiff's intestate could not, because of defective eyes, read so much of the policy form as was printed in small type in the said advertisement. It does not appear that he was seen to read the advertisement. Whether he ever read his policy is not disclosed. The testimony tends to prove that on account of the type used he could not have read it. The ticket agent testified that if he had supposed plaintiff's intestate to be more than 65 years old he would have directed attention to clause D in the policy. The jury was advised—

"That if plaintiff's husband, when he bought his railroad ticket to Detroit, did not then intend to take out insurance, and was thereafter attracted by the advertisement of the defendant on the metal advertisement to take out the insurance, and the advertisement led him to understand, and could fairly have led a reasonable man, exercising ordinary prudence, to understand that a man in his condition and of his age was insurable by defendant's policy or contract of insurance, and then asked for the insurance, and no representations were made by Mr. Hause, and no questions were asked by defendant's agent as to his being insurable, and no statements made by the agent as to who could or could not be insured, and under those circumstances Mr. Hause asked for this policy, paid for it, received the policy, and accepted it, without objection on the part of either, then defendant is estopped from denying its liability because of clause D, and, of course, if these things do not occur, gentlemen, then, of course, there wouldn't be any liability on this part or branch of the case. In other words, if he did not see this advertisement at all, but he stepped up there and asked for a policy without any regard to the advertisement, and this policy was handed out to him, then I question very much, under this case, whether he could recover at all. But these instructions have reference to his having examined and being directed by the advertisement which was hanging there at the time."

A verdict having been returned for the plaintiff, and a judgment thereon duly entered, defendant alleges as errors, relied upon in this court, that—

" The court erred in refusing to give to the jury defendant's request to charge No. 1, as follows:

" 'Under the law and the evidence in this case, your verdict will be for the defendant.'

" The court erred in refusing to give to the jury defendant's request to charge No. 3, as follows:

" 'The material allegations in the first count of the declaration are not sustained by the evidence, and plaintiff cannot recover on that count.'

" The court erred in refusing to give to the jury defendant's request to charge No. 4, as follows:

" 'The evidence in the case does not sustain the material allegations set forth in the second count in plaintiff's declaration; therefore plaintiff is not entitled to your verdict upon that count.'

" The court erred in refusing to give to the jury defendant's request to charge No. 5, as follows:

" 'The evidence does not sustain the material allegations set forth in the third count in plaintiff's declaration; therefore plaintiff is not entitled to a verdict upon that count.'

" The court erred in refusing to give to the jury defendant's request to charge No. 6, as follows:

" 'There is not sufficient evidence in the case tending to prove that the defendant at any time waived any of the material provisions in the policy, and you are not authorized to find a verdict for plaintiff on that theory.'

" The court erred in refusing to give to the jury defendant's request to charge No. 7, as follows:

" 'Plaintiff, in her declaration, relies upon an alleged contract with defendant. This contract is in writing, and the plaintiff is bound by the terms and conditions of said writing. She cannot claim the benefit of those parts of the writing which are favorable to her and ignore such as are not favorable. Under clause D of the ticket or policy, when applied to the undisputed evidence in this case, plaintiff is not entitled to recover, because the assured was at the time that the ticket was issued over 65 years of age.'

" The court erred in refusing to give to the jury defendant's request to charge No. 10, as follows:

" 'The evidence is undisputed that Gund, the agent who issued the ticket or policy, acted in good faith, believing from what information was before him that John Hause was not over 65 years

of age.   Neither Gund nor the defendant company was guilty of any act of fraud or deception, and your verdict will be for the defendant; it being immaterial, in view of these facts, what other people may have thought of the age that his appearance indicated.' "

And that the court erred in the charge given, as above set out.

If defendant's waiver of the provision in clause D of its policy is established, the judgment ought to be affirmed, although the facts supporting the finding are not those submitted to the jury.   All of the circumstances are to be considered in determining the question.   We are impressed that they conclusively establish a waiver of the provisions of the said clause.   If they do not, if upon the facts disclosed this provision of the policy is enforced, a fraudulent business is and may continue to be carried on by defendant.   We assume, without hesitation, that it does not intend to conduct a fraudulent business, or to conduct its business in a fraudulent manner, and that it does intend that its agents who sell its post card policies of indemnity shall inform intending purchasers that it in fact offers them to only a portion of the public. Otherwise its advertisement, its course of business, and the circumstances under which it is done, invite any one and every one to buy.   They necessarily operate to prevent the purchaser from discovering, after the policy is delivered and the premium is paid, that the indicated indemnity is not offered to him.   They demand affirmative action on the part of the agent before the contract is entered into.   The printed rule of defendant, with respect to the age of persons with whom it will contract, is an arbitrary one, made by itself, and may be changed, waived, or abrogated at its pleasure.   It should be held to have waived it when such affirmative action is not disclosed, and when it is not shown that the purchaser had knowledge of the condition.

The judgment is affirmed.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, and STONE, JJ., concurred.   BIRD, J., did not sit.