## THURSTON v. NORTHERN NAVIGATION CO.

1. CARRIERS—CONNECTING CARRIERS—RESPONSIBILITY FOR ENTIRE TRIP—PRESUMPTIONS—SPECIAL CONTRACT.

   The presumption that a common carrier in selling a ticket over its own and a connecting line does not assume any responsibility for the acts of the connecting carrier or its agents, is not applicable where there is a special contract with the initial carrier by which it assumes the responsibility for the entire trip.

2. SAME — PERSONAL INJURIES — LIABILITY OF INITIAL CARRIER — CONTRACTS.

   Where defendant steamship company sold plaintiff a round-trip ticket for a voyage on the Great Lakes, including side trips in automobiles which it arranged for and advertised as part of the trip and which were paid for in the price of the ticket, in an action for personal injuries received while plaintiff was on a side trip riding in an automobile owned by another company, evidence *held,* sufficient to

sustain the finding of the jury that defendant by its contract assumed responsibility for said side trips, rendering it liable for the negligence of said other company or its agents.

3. SAME—EVIDENCE—TICKET—CONTRACT OF CARRIAGE—PAROL EVIDENCE.

The ticket sold by a carrier to a passenger is not the sole evidence of the contract of carriage, but the real contract may be shown notwithstanding the issuance and acceptance of the ticket.

4. SAME—TICKETS—CONDITIONS LIMITING LIABILITY—ACCEPTANCE.

In case of a full-fare ticket, a passenger is not bound by the conditions thereon limiting the common-law or contractual liability of the carrier unless such conditions are called to the attention of the passenger and assented to by him.

Error to Wayne; Mandell, J. Submitted January 7, 1919. (Docket No. 4.) Decided April 3, 1919.

Case by Lucy E. Thurston against the Northern Navigation Company, Limited, for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Miller, Canfield, Paddock & Perry,* for appellant.

*R. E. Hofelich,* for appellee.

STONE, J. This is an action for damages for personal injuries to plaintiff. The plaintiff was injured at Duluth, Minnesota, on August 14, 1917, while on a cruise, so-called, given by the defendant. At the time of the injury she was riding in an automobile owned by the Board of Trade Livery Company, of Duluth, the automobile ride being given as a part of the cruise.

The plaintiff was the editor and sole manager of a monthly publication known as "Modern Methods," published by the Richmond & Backus Company of De-

troit, a corporation, under the name of Modern Methods Publishing Company.

The defendant operates a line of steamers between Windsor, Ontario; Detroit; Sarnia, Ontario, and Duluth, and intermediate ports.   About June 1, 1917, there came into the hands of the plaintiff, as such manager, a letter from the advertising manager of the defendant, which, omitting immaterial portions, was as follows:

"MODERN METHODS,
    "Detroit, Mich.
    "*Gentlemen:* We want to extend to you the opportunity of taking a six-day, round trip Great Lakes Voyage this summer, paying for one-half of the entire cost of the trip with advertising in your publication.

"The trip is the 1,600-mile Huron-Superior Cruise, starting at either Detroit, Sarnia or Duluth.  *  *  * The entire cost is $53.50 from Detroit or $50.00 from Sarnia, including transportation, meals, berth, side trips—everything.

"The enclosed 'proof' shows you our double column, seven-inch advertisement.  If you will run this advertisement in your publication enough times to equal the cost of transportation on the trip—or, in other words, one-half of the entire cost—we will accept the other half, $26.75 or $25.00 in cash as payment for meals, berth, etc.  You may accept this offer for yourself, or some member of your family or organization. In case you wish more than one ticket, you should figure on allowing us enough advertising to equal the amount of the transportation.  For instance, if you desire two tickets from Detroit to Duluth, you should allow us $53.50 in advertising, and the cruise for two will cost you $53.50 in cash.

"This Huron-Superior Cruise is truthfully called the Greatest Fresh Water Voyage in the world.  *  *  *  We could never begin to explain its wonders in this limited space, so we are sending under separate cover a folder, including time table, which will tell you all about it.  Please read the enclosed card carefully.  Then sign and mail it, being sure to fill out all blank spaces.  *  *  *  When we receive the

card we will consider the agreement made between us. * * * Come along this year and * * * bring someone in your family or organization with you."

The "proof" referred to in the foregoing letter and enclosed therewith, was an advertisement headed "Northern Navigation Cruises," and contained, among other things, the following:

"1,600 Mile, Six-Day Detroit-Duluth Cruise—Between Detroit, Sarnia, S. S. Marie, Port Arthur, Ft. William and Duluth. Excellent meals, comfortable staterooms, side trips—all included in your ticket. No extras."

The folder referred to in the letter was received by the plaintiff and read by her. She also secured an additional folder and took it home with her. This folder contained a detailed description of the Detroit-Duluth trip with the following references to the Boulevard drive in Duluth:

"To enhance your pleasure, we have added personally conducted side trips, such as visits to Falls, Boulevard Drive, fishing excursions and basket picnics to quaint spots.

"So that none of the most wonderful things may be missed, arrangements have been made by the Northern Navigation Company for a personally conducted trip about the Boulevards, and interesting places of Duluth,—a most pleasing and delightful diversion."

After the descriptive portion of the folder and in the portion giving rates of fare, time tables, etc., appears the following:

"NORTHERN NAVIGATION CONTINUOUS CRUISES. Personally Conducted Tours of the Great Lakes, with Side Trips, Meals, Berths, Afternoon Teas, etc., all included in the Tickets.

"Cruise No. 1. Detroit, Mich., or Sarnia, Ont., to Duluth, Minn., and return. * * * This six-day cruise includes meals, berth, trip to Kakabeka Falls

at Port Arthur, drive around the boulevards at Duluth, returning to Detroit six days after embarking. Price of entire cruise (continuous passage) $53.50."

The minimum round trip fare, including meals and berth, is shown by the table of fares to be $53.50. Near the end of the folder is a list of the connecting carriers at the various ports. The Board of Trade Livery Company is not included in this list of connecting carriers, nor is it specifically mentioned anywhere in the folder.

After discussing the trip with members of her family, the plaintiff filled out and returned the card enclosed with, and referred to in, the letter. The material portions of this card read as follows:

"I accept your proposition as outlined in your letter of June 1st. * * * Please issue ticket (tickets) to Mr. and Mrs. John Ferguson, Miss L. E. Thurston (Editor) and Mrs. J. O. Thurston (Mother). I will arrange the date of sailing and inform you whether I wish to start from Detroit or Duluth when you ask me for this information."

The defendant's advertisements were run in the July and August issues of "Modern Methods," and about July 11th the plaintiff received a letter, enclosing transportation tickets, so-called, the material portions of which are as follows:

"MODERN METHODS,
    "Detroit, Michigan.
    "Attention: Mr. L. E. Thurston.
    "*Gentlemen:* You will find enclosed transportation tickets for Miss L. E. Thurston * * * all of which will apply on the Northern Navigation exchange contract which you have with us. If you will take these tickets to the office of Mr. Leidich, 69 Fort street, west, he will show you a chart of the boat, so that you may reserve just the accommodation you desire, and these transportation tickets enclosed will apply on your tickets to the values indicated on each ticket."
*   *   *

Enclosed with this letter were transportation tickets for the several persons named in the letter. The material portion of the ticket issued to the plaintiff was as follows:

"Northern Navigation Company, Ltd.   Duplicate Advertising Order.   Good for One First Class Passage, Meals and Berth Extra.   From Detroit to Duluth.   For L. E. Thurston account of 'Modern Methods.'   *   *   *   Under no circumstances must this ticket be sold or transferred.   *   *   *   It will not be accepted for passage unless presented by the person named hereon, whose signature is reproduced on back hereof before presentation for passage.   Meals and berth to be paid for in cash at one-half of regular fare for any trip.   To be signed in ink before presenting for passage.   Side trips which are a part of regular cruise are included in this ticket.   If presented by any other person than the one whose name is shown hereon, ticket will be forfeited and purser will collect regular fare."

After the foregoing was a blank for the holder's signature. This ticket was signed by Miss Thurston, and was taken by her to the office of Mr. Leidich, the defendant's agent, where she made her reservation and paid the balance of the cost of the trip in cash. At the time of surrendering the ticket and paying the balance of the money, she received another ticket in booklet form containing seven coupons for the several portions of the trip. The first three coupons were for use on the defendant's boats and did not purport to be anything more than tokens evidencing the passenger's right to transportation and accommodations. The fifth coupon was for the Boulevard drive at Duluth and was in the following form:

"Issued by Northern Navigation Company (Limited).   Board of Trade Livery.   Boulevard Drive at Duluth.   On Conditions named in contract.   First Class—Not good if detached from contract bearing signature.   Duluth, Minn. & Return."

On the inside of the back cover of the ticket were certain conditions in fine print, among which was the following:

"2nd. In selling this ticket for passage over other transportation companies' lines, this company acts only as agent, and assumes no responsibility beyond its own line."

Below the conditions were the words, "I agree to the above," with a blank space marked "Signature," and another marked "Witness." The plaintiff testified that these conditions were not called to her attention at the time the ticket was issued to her; that she did not sign the same; that she was not asked to do so, and that she had no knowledge of their existence. This testimony was not contradicted, and the defendant did not produce the unused portion of the ticket, which had been surrendered by the plaintiff. She had the ticket in her possession for about two weeks before sailing, but according to her testimony she made little or no examination of it, but put it away in a safe place and did not get it out until the morning she started away. When the ticket was called for, she handed it to the purser, or other officer, who took out the necessary coupons and returned it to her, and she put it in her bag.

The plaintiff commenced her trip on August 11th, and was injured on August 14, 1917, while taking the Boulevard drive, called for by her ticket, in a vehicle furnished by the Board of Trade Livery Company, a Minnesota corporation, under an arrangement between the latter and the defendant. This arrangement between the two companies, which are separate corporations having no identity of ownership or management, appears to have been oral, and was made at the direction of the defendant's general passenger agent, who testified that the cruise was gotten up in as at-

tractive a manner as possible, in order to procure as many tourists as possible, and that the side trips, including the Boulevard drive, were for the purpose of adding to the attractiveness of the cruise. The defendant paid the Livery Company seventy-five cents for each of the former's passengers carried by the latter. The full name of the Board of Trade Livery Company does not appear anywhere in any of the correspondence, or folder, or the tickets issued to the plaintiff; and the only place where the words "Board of Trade Livery" appear is on the coupon in the ticket, exhibit 7. It further appeared that the plaintiff had twice before taken this same trip, using the same kind of ticket.

At the time of the injury said automobile was being driven by an employee of said Board of Trade Livery Company, nor was there an employee of defendant in the machine. This livery company conducted a general taxi-cab, transfer and baggage business in Duluth.

At the close of the plaintiff's evidence, defendant moved for a directed verdict, on the ground that the plaintiff's proofs show that at the time of the injury alleged in the declaration the plaintiff was not a passenger of the Northern Navigation Company, but was a passenger of the Board of Trade Livery Company; and that she was such a passenger of the Board of Trade Livery appears on the face of the coupon in the ticket entitling her to the Boulevard drive at Duluth; and, further, defendant is not responsible for the injuries received by the plaintiff while taking this Boulevard drive over the line of the Board of Trade Livery by virtue of the provision in the contract of carriage, the second condition being:

"In selling this ticket for passage over other transportation companies' lines, this company is acting only as agent, and assumes no responsibility beyond its own line,"

—which ticket and contract were accepted by the plaintiff and kept in her possession for approximately two weeks before starting the voyage, and after the commencement of the voyage for three days before taking the Boulevard drive.

This motion was denied by the court, and was renewed at the close of all the testimony, with the additional reason that all the counts of the plaintiff's declaration rely solely upon the contract for transportation made with "Modern Methods,"—a trade name under which the Richmond & Backus Company trade; and that the plaintiff cannot rely upon this contract of transportation because she was not a party to it. The court reserved its decision upon this last motion. Upon the trial the plaintiff recovered a verdict of $1,700.

There was made subsequently a motion for judgment for the defendant *non obstante veredicto*. This motion was denied, defendant duly excepting, and a judgment upon the verdict was entered for the plaintiff. The defendant has brought error, and the only assignments of error are on the refusal of the court to direct a verdict for the defendant, and to the refusal to enter judgment *non obstante veredicto*.

The only question upon this record is whether there was any evidence from which the jury might find that the defendant company contracted as principal, to furnish the plaintiff with the Boulevard drive. The legal questions raised and discussed by the appellant are: That it appearing that the accident occurred off defendant's own line, it is not liable.

*First.* That the defendant, presumptively, is not liable.

*Second.* That this presumption is not rebutted, and therefore there is no extra terminal liability.

*Third.* That the ticket (exhibit 7) is. the contract, and that the plaintiff is bound by the limitation against extra terminal liability, in the ticket.

*Fourth.* That the statements in the defendant's folder and in the correspondence between it and "Modern Methods," are no part of the plaintiff's contract, plaintiff not being a party thereto.

1. Upon the first proposition appellant quoted from 10 Corp. Juris, p. 818, the following language:

"*Rule of No Extra Terminal Liability.* By the weight of authority, in the absence of a special contract for through transportation, the sale by a carrier of an ordinary coupon ticket for transportation over its own, and an independent connecting line, does not give rise to a contract for through transportation, but the initial carrier acts as principal merely with reference to its own line, and as agent of the connecting carrier in contracting for transportation over the connecting line; and the right of the purchaser and the responsibility of the different companies are the same as though separate tickets had been purchased by him from each, and each is responsible only for the acts of its own agents and for injury suffered on its own line, or for the fault or negligence of its employees while running its cars on the connecting line. In such a case the initial carrier discharges its duty when it delivers the passengers at the end of its own line ready to continue the transportation on the connecting line, and it will not be liable for any failure of the connecting carrier to perform its independent contract."

Also, counsel cite *Dresser* v. *Railway Co.,* 53 C. C. A. 559, 116 Fed. 281; *Chicago, etc., R. Co.* v. *Mulford,* 162 Ill. 522 (44 N. E. 861, 35 L. R. A. 599); and *Pennsylvania R. Co.* v. *Jones,* 155 U. S. 333 (15 Sup. Ct. 136). We have examined these authorities, and we think they are to the effect that in the absence of any special contract, the mere act of selling tickets of other transportation companies does not make the selling company liable as principal. But this, in our opinion, does not fully meet the question before us. At the close of the section in Corpus Juris, from which appellant's counsel quoted, is the following:

"It has been held, however, that where the initial carrier sells a passenger a ticket entitling him to ride over the lines of the initial and connecting carrier, but without any stipulations as to liabilities for accidents, the initial carrier does not thereby relieve itself from liability for injuries received on the line of the connecting carrier."

It is said by plaintiff, in reply to appellant's contention upon this point, that the presumption against extra terminal liability has no application, because the claim of the plaintiff is founded upon a special contract for the entire trip. In other words, that the presumption contended for by appellant only exists in the absence of a special contract, and that the principle of the cases cited is not applicable to the instant case, in which plaintiff's claim is founded upon a contract by which the defendant assumed the responsibility for the entire trip. We think there is much force in this position of plaintiff's counsel.

2. It is urged by appellant that this presumption is not rebutted by any evidence in the case; that there is nothing in the letter of the defendant, or in what is termed the "proof," or the regular folder of the defendant, that even approximately shows a contract for extra terminal liability, and defendant's counsel, upon this point, cite *Myrick* v. *Railroad Co.*, 107 U. S. 102 (1 Sup. Ct. 425), to the effect that such agreement will not be inferred from doubtful expressions or loose language, but only from clear and satisfactory evidence. And counsel insist that without relying on the limitation against extra terminal liability apparent in the ticket, the defendant is entitled to a reversal of the judgment below.

In reply to this position, it is urged by plaintiff's counsel that the evidence clearly established a contract by which the defendant, as principal, assumed the responsibility for the Boulevard drive; that the final ticket issued to the plaintiff is not the sole evi-

dence of the contract, the existence and terms of which are to be determined from the facts and circumstances in the case.

That the jury, under the charge, considered the facts, and found the existence of a contract for through transportation, no doubt from the letter of the defendant, the "proof" enclosed with the letter, the folder, and the first ticket issued to the plaintiff (being the ticket which she exchanged for the coupon ticket), the original ticket having stated that "the side trips which are a part of regular cruise, are included in this ticket." This ticket was issued to the plaintiff with her name written thereon, in the space provided therefor, and she was required to, and did sign it at the time of presentation for the coupon ticket. The fare was the regularly advertised fare. The "side trips" therein referred to as a "part of the regular trip" could mean nothing else than the trips including the Boulevard drive, referred to in the folder.

It is further urged by plaintiff that even if the language used were less plain and unambiguous, any doubt regarding the meaning of the same would, under a well-established rule, be resolved against the defendant—citing *Norman* v. *Railway Co.*, 161 N. C. 330 (77 S. E. 345, Ann. Cas. 1914D, 917), where the following language is used:

"In construing contracts of this kind, language of uncertain or doubtful meaning should generally be taken in its strongest sense against the company by which the ticket was issued and sold, and in favor of the purchaser."

See *Georgia Railroad & Banking Co.* v. *Clarke*, 97 Ga. 706 (25 S. E. 368) ; *Baltimore & Ohio R. Co.* v. *Doyle*, 74 C. C. A. 245, 142 Fed. 669; *Stanard Milling Co.* v. *Transit Co.*, 122 Mo. 259 (26 S. W. 704).

It is answered by plaintiff that the fact that she

205—Mich.—19.

had made the Duluth trip on former occasions and had used a ticket similar to the ticket in this case, is unimportant; that it was merely a circumstance to be considered by the jury in determining whether the plaintiff had actual knowledge of the conditions of the ticket—citing *The Majestic*, 166 U. S. 375 (17 Sup. Ct. 597).

We cannot say that the correspondence in connection with the "proof," especially the folder which came into the possession of the plaintiff, outside of the correspondence, and was evidently intended for the use of the public generally, furnished no evidence for the jury to reach the conclusion which it did.

3. It is the proposition of the appellant here, that the ticket (exhibit 7) constituted the entire contract. Counsel there cite 10 Corp. Juris, p. 702, § 1137-*b; McWethy* v. *Railroad Co.*, 127 Mich. 333 (55 L. R. A. 306), and many authorities from other jurisdictions.

It is claimed by appellant that all authorities, both English and American, agree that the carrier in selling a ticket beyond its own line, may appropriately limit its liability to its own line, there being no obligation on its part to assume extra terminal liability. We agree with this proposition, but think the question involved here is, whether in selling this ticket it appropriately limited its liability to its own line, in explicit terms that were called to the attention of the plaintiff.

In *McWethy* v. *Railroad Co., supra,* the question of whether the plaintiff's attention there had been actually called to the terms of the ticket was not involved; and there was no evidence of a special contract. It is the contention of the plaintiff upon this branch of the case, that the ticket is not the sole evidence of the contract; that the real contract may always be shown notwithstanding the issuance and acceptance of the ticket; that the coupon contained no reference

to the back cover; that while it is true that the coupon in question did contain the words "on conditions named in contract" and "not good if detached from contract bearing signature," there was nothing which in any way tended to call the attention to the inside of the back cover; and it is urged that the ticket was not sold, as claimed by defendant, at a reduced rate. It was sold for the price stated in the letter of June 1st and in the company's folder as a regular fare; and an inspection shows that the ticket itself does not purport to be a reduced rate ticket.

The rule that the ticket is not the sole evidence of a contract is stated in 2 Hutchinson on Carriers (3d Ed.), at section 1050, as follows:

"There is, however, nothing in the employment of such tickets (coupon tickets) inconsistent with the idea of a contract for through transportation by the first carrier, which will make him the responsible party to the passenger for all injuries or losses throughout the entire journey. It may, therefore, be shown that there was such a contract notwithstanding the acceptance of such tickets, and that the tickets were delivered .in pursuance of the contract; and whether or not there was such a contract must, in every case of the kind, depend upon the facts."

Plaintiff's counsel also cites Hayes v. Railroad Co., 163 Mich. 174 (31 L. R. A. [N. S.] 229). We invite attention to that case, and especially to the following language of this court:

"Argument is made that the contract between these parties is determined by the ticket issued at the time. * * * The contract of carriage may be shown by parol, and the plaintiff's proof tended to show that it was made several days before the tickets were purchased."

See, also, a leading case upon this point, Quimby v. Vanderbilt, 17 N. Y. 306 (72 Am. Dec. 469); Hutchins v. Railroad Co., 181 N. Y. 186 (73 N. E. 972, 106 Am. St. Rep. 537); New York, etc., R. Co.

v. *Winter's Adm'r*, 143 U. S. 60 (12 Sup. Ct. 356);
*Chicago & Alton R. Co.* v. *Dumser*, 161 Ill. 190 (43
N. E. 698), and many additional cases might be cited
from other jurisdictions.

In the *Quimby Case* it was held that a part owner
of one of several lines for the transportation of pas-
sengers, running in connection over different portions
of a route of travel, may contract as principal for the
conveyance of a passenger over the whole route, and
that such contract may be established by the circum-
stances, notwithstanding the passenger receives tick-
ets for the different lines signed by their separate
agents; and that passage tickets are generally to be
regarded as tokens, rather than contracts, and are not
within the rule excluding parol evidence to vary a
written agreement.

It is further urged by plaintiff that in the instant
case the attempted limitation on the inside of the back
cover in fine print did not bind the plaintiff, as she
might have been bound had it appeared upon the face
of the ticket, or had it been called to her attention.
The following cases apply the universally recognized
rule, that in the case of a full fare ticket a passenger
is not bound by conditions thereon, limiting the com-
mon law or contractual liability of the carrier, unless
such conditions are called to the attention of the pas-
senger, and assented to by him. A very strong case
upon this subject, and one which reviews many Eng-
lish and American cases, is *The Majestic, supra;* and
the following cases seem to be to the same effect:
*Norman* v. *Railway*, 65 S. C. 517 (44 S. E. 83, 95
Am. St. Rep. 809); *Boyd* v. *Spencer*, 103 Ga. 828 (30
S. E. 841, 68 Am. St. Rep. 146); *Louisville, etc., R. Co.*
v. *Turner*, 100 Tenn. 213 (47 S. W. 223, 43 L. R. A.
140); *The Minnetonka*, 77 C. C. A. 217, 146 Fed. 509;
*Hutchins* v. *Railroad Co., supra.* Without quoting
therefrom we especially refer to *The Majestic Case.*

The learned circuit judge, in submitting the case to the jury, laid much stress upon the question whether the plaintiff had, or had not, notice of the condition printed upon the inside of the back cover of the coupon ticket, above referred to, and upon that subject charged the jury as follows:

"If you believe from the testimony in this case and from the circumstances surrounding the purchase of the ticket that the plaintiff actually knew, prior to the time that she boarded the automobile in Duluth, that the ticket contained printing in the form of a contract, then, in that event, plaintiff was not, at the time of the accident sued upon, the passenger of defendant, and defendant is not responsible to her in this action. That raises the question as to whose passenger the plaintiff was when she was injured. Was she the passenger of the defendant, or was she the passenger of the independent corporation? If you believe that the plaintiff was familiar with the contents of the ticket because of having traveled on like tickets on previous occasions, the same rule applies as to liability."

Manifestly, the jury, by its verdict, must have found that the plaintiff had no knowledge or notice of the printed matter in the so-called condition upon the inside of the back cover of the coupon ticket. There the defendant undertook to limit the contractual liability which it had, we think, before that time expressly assumed. We are of the opinion that the position of the plaintiff upon this point is the correct one. *Hause* v. *Insurance Co.*, 172 Mich. 59.

4. It is lastly urged by the appellant that the preliminary correspondence cannot avail the plaintiff in any event, because the letter was not addressed to her. It is true that the first letter was not addressed to her, but to her employer. However, the card which was sent to the defendant contained the plaintiff's name, and the last letter was directed to the attention of "Mr.

L. E. Thurston," undoubtedly meaning Miss L. E. Thurston, whose name is mentioned in the letter.

There is no assignment of error raising objection to the introduction of evidence upon the trial. Whether or not the plaintiff was a party to the first correspondence, she certainly became a party before the contract was closed, and was recognized by the defendant as possessing rights under the contract. It appears also that the plaintiff had access to other copies of the folder, and it must be said that they were addressed to the public generally; and where a contract was made, as appears in the first ticket (exhibit 5) signed by the parties, we think it became controlling as against any language contained on the back cover of the coupon ticket which was not called to, and did not come to, the attention of the plaintiff.

Upon the whole record we are of the opinion that no reversible error appears, and the judgment of the court below is affirmed.

BIRD, C. J., and MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred. OSTRANDER, J., did not sit.