FARNSWORTH *v.* NATIONAL EXPRESS CO.

1. CARRIERS—EXPRESS COMPANIES—BILL OF LADING—LIMITATION
OF LIABILITY.
    If, without issuing a receipt, bill of lading, or other evidence
    of special contract, an express company accepts for carriage
    goods of greater value than fifty dollars, no limitation of
    liability is created, and the carrier is subject to common-law
    rules.

2. SAME.
    The carrier cannot limit its liability by afterwards delivering
    to the consignor a receipt containing the usual limited liabil-
    ity clause, unless the consignor had notice of a claim for such
    a limitation at the time of shipment.

3. SAME—STATUTES—MICHIGAN RAILROAD COMMISSION.
    Under the terms of Act No. 300, Pub. Acts 1909, providing for
    the filing of schedules with the railroad commission and for
    limiting the liability of the carrier to fifty dollars, unless a
    greater value is declared, but by express words preserving
    the common-law liability of the carrier, a contract as afore-
    said does not limit the liability of the express company.

4. SAME.
    Unless the consignor procured the shipment of the property
    with intent to defraud the carrier of the increased rate to
    which it would properly have been entitled, he was entitled
    to recover the value of his property lost without excuse in
    transit.

Error to Lapeer; Smith, J. Submitted June 15, 1911.
(Docket No. 65.) Decided September 29, 1911.

Case by John M. Farnsworth against the National
Express Company. A judgment for plaintiff for less than
the amount claimed, upon a verdict directed by the court,
is reviewed by plaintiff on writ of error. Reversed.

*Herbert W. Smith,* for appellant.

*Geer, Williams & Halpin,* for appellee.

BROOKE, J. Plaintiff, at the village of Imlay City, delivered to defendant a package to be carried by defendant to Detroit. Plaintiff testified that the package was unsealed at the time of delivery; that he requested defendant's agent to seal it, as he (plaintiff) had no sealing wax; that the agent stated it would be just as well to seal it by pasting a "paid through" label upon the end of the box, which he (the agent) did. Plaintiff was not asked for, nor did he disclose, the character of the contents of the package nor its value, and no receipt therefor was either demanded or given at the time. Plaintiff asked the agent what the charge would be, and the agent, after "hefting" the package, said, "Twenty-five cents," which sum plaintiff paid. Four or five days later, the package not having been delivered, plaintiff called upon defendant's agent and requested him to send a tracer to find the package, at which time defendant's agent gave to plaintiff a receipt which contained the following language:

"Nor in any event shall the company be held liable or responsible nor shall any demand be made upon it beyond the sum of fifty dollars unless the just and true value thereof is stated herein, and an extra charge is paid or agreed to be paid therefor, based upon the higher value."

The package, in fact, contained a diamond ring valued at $200, and was never delivered. Defendant tendered to plaintiff the sum of $50, which he refused and brought suit for the value of the ring. Upon the trial a verdict was directed in favor of plaintiff, at the request of defendant, for the sum of $50, and plaintiff has brought the case to this court for review.

The record shows that plaintiff had been engaged in the jewelry business at said village for 25 years, during which time he shipped by express five or six packages each year, never receiving a receipt for a package upon delivery, and that he did not know that defendant's rate for carriage varied with the declared value of the package to be carried. The evidence negatives the idea that plaintiff refrained from declaring the value of the package in order

to fraudulently secure its carriage at less than the proper tariff.

It is urged by plaintiff, and we do not understand that this proposition is seriously disputed by defendant, that in the absence of statutory regulation, where no receipt is given at the time of shipment, the carrier cannot limit its liability by afterwards delivering to the shipper a receipt containing the limited liability clause, if the evidence shows that the shipper had no knowledge that the carrier claimed any such limitations at the time of shipment. If, without any receipt or bill of lading being issued, the goods are accepted by the carrier for transportation, his common-law liability attaches. We think this rule is fully sustained by the authorities. In *Magnin* v. *Dinsmore*, 62 N. Y. 35 (20 Am. Rep. 442), the court said:

" Where there is no special contract limiting the common-law liability of the carrier, nor any notice so specially brought home to the knowledge of the shipper as to have that effect, the shipper is not bound to disclose the value of the goods, unless he is asked thereof by the carrier; but the carrier * * * has a right to make inquiry and to have a true answer, and, if he is deceived by a false answer given, he will not be responsible for any loss. If, however, the carrier makes no inquiry, and no artifice is used to mislead him, he is responsible for loss, however great may be the value. Such is stated in Story on Bailments (§ 567), to be the better opinion, and the cases there cited sustain the text."

See, also, *American Express Co.* v. *Edward Spellman*, 90 Ill. 455; *Graves* v. *Express Co.*, 176 Mass. 280 (57 N. E. 462); 9 Cent. Dig. § 696; 6 Cyc. p. 407.

But defendant contends that its common-law liability is abrogated by reason of the provisions of Act No. 300 of the Public Acts of 1909. This act provides for the filing of schedules with the railway commission and in the various offices of the carrier and forbids the carrier to depart therefrom in making its charges. Defendant showed that its schedules had been duly filed in accordance with

this act and that one of the provisions thereof was as follows:

"Valuation charges:

"(a) Merchandise rates are based upon a value of not exceeding fifty dollars per shipment, and no further liability is assumed by the express company unless the shipper declares at time of shipment a higher value.

"(b) When the declared value of any shipment of merchandise, jewelry, valuable papers, postage stamps, etc., exceeds fifty dollars, the following additional charges must be made on the value in excess of fifty dollars, viz.: When merchandise rate is three dollars or less per hundred pounds, ten cents for each hundred dollars value or fraction thereof."

Section 40 of the act provides in part as follows:

"Whenever any property is received by any common carrier, subject to the provisions of this act, to be transported from one place to another in the State, it shall, upon demand by the shipper, issue a receipt or bill of lading therefor, naming therein the classification of such freight at which the same is to be carried. And no common carrier shall limit or change its common-law liability by contract or otherwise as to its responsibility for the negligent act of its agents and servants with reference to property in its custody as a common carrier. *Provided*, that nothing herein contained shall be so construed as to abridge or in any wise lessen the liability of any such common carrier as it now is under existing laws."

Counsel for defendant state:

"It is our contention that the statute requiring the filing of rate classification in the express offices, with notice that they are there for the inspection of shippers, and requiring a receipt to be given to the shipper only on demand, places the parties in the same position they were in when a receipt was given, before the statute was passed, showing the limitation as to liability, and in such case counsel concedes, and the cases all hold, that the limitation as to liability is valid."

In view of the proviso of section 40, above quoted, we are of opinion that it was not the intention of the legislature to change the common-law liability of carriers as it

had existed prior to the passage of the act. The contention of defendant that such a holding will permit carriers to evade the terms of the statute by carrying goods for a different price or under different conditions than those given in the classification and schedules is, we think, without force.

The Federal decisions under the so-called interstate commerce act, *Texas, etc., R. Co.* v. *Mugg & Dryden*, 202 U. S. 242 (26 Sup. Ct. 628); *Gulf, etc., R. Co.* v. *Hefley*, 158 U. S. 98 (15 Sup. Ct. 802), and *Texas, etc., R. Co.* v. *Oil Co.*, 204 U. S. 426 (27 Sup. Ct. 350), cited by defendant, have been examined; but, in view of the proviso of our State act, they are not controlling.

Defendant had and has, under Act No. 300, the right to ascertain the value of the package to be carried, and it became its duty thereupon to charge its regular schedule rates for transportation. Its failure to do this cannot be permitted to defeat plaintiff's right to recover the full value of the package, in the absence of any showing of limitation of liability in the contract of carriage, or of fraud or deceit on the part of the plaintiff in making the shipment.

The judgment is reversed, and a new trial ordered.

OSTRANDER, C. J., and BIRD, BLAIR, and STONE, JJ., concurred.