MOSIER v. AMERICAN RAILWAY EXPRESS CO.

1. CARRIERS—LOST TRUNK—EVIDENCE—ADMISSIBILITY.

In an action against an express company for the value of a lost trunk, refusal of the trial court to admit testimony as to charges on "shipments collect" on which no value was declared, *held*, not prejudicial, in view of the fact that defendant's expert had been permitted to go fully into the matter of tariffs and classifications, and no claim is made that the term has any different meaning from "charges collect."

2. SAME—RECEIPT—CONSTRUCTION—NOTICE.

A uniform express receipt issued by an express company for a trunk on which the value was undeclared, limiting the liability of the company in such case to $50, and accepted by the shipper without reading and without notice of its contents, *held*, under the rule construing the same most strictly against the maker, not to limit its common-law liability.

3. SAME—CONSENT—PRESUMPTION—REBUTTAL.

The acceptance by a shipper without objection of a receipt prepared and handed him by the carrier, while raising a presumption of knowledge of and consent to the stipulations contained in it, is not conclusive, but, like any presumption of fact, is open to rebuttal.

Error to Wayne; Dingeman (Harry J.), J. Submitted April 21, 1920. (Docket No. 77.) Decided June 7, 1920.

Case in justice's court by Irvin E. Mosier against the American Railway Express Company for the nondelivery of a trunk. There was judgment for plaintiff for less than the amount claimed, and he appealed to the circuit court. Judgment for plaintiff. Defendant brings error. Affirmed.

As to limitation of carrier's liability for passenger's luggage, see notes in 19 L. R. A. (N. S.) 1006; 34 L. R. A. (N. S.) 818; and L. R. A. 1916A, 1273.

*Campbell, Bulkley & Ledyard* (*Wilson W. Mills* and *Charles McV. Willits,* of counsel), for appellant.

*Henry C. L. Forler* and *Sidney S. Cole,* for appellee.

STEERE, J. This case, involving the value of a lost shipment by express, reached the circuit court of Wayne county on appeal from a judgment in justice's court. Upon re-trial in the circuit court plaintiff had judgment for the sum of $464, and defendant removed the cause to this court for review by writ of error. On August 16, 1918, plaintiff delivered to defendant, at its Detroit office, a trunk containing wearing apparel and other personal effects for transportation to Harbor Beach, Michigan, consigned to himself at that point, "charges collect." Upon the trial it was admitted that the trunk was received by the company for transportation and has never been delivered. Plaintiff's bill of particulars contained an itemized statement of its contents, consisting of wearing apparel, etc., valued at $433.50, and defendant's counsel stated upon the trial when that subject was introduced: "We admit the value of the shipment and the items as set forth in the bill of particulars." At the time plaintiff delivered the trunk to the express company in Detroit nothing was said by either him or the express company's agent as to the contents of the trunk, its value, or the rate to be charged. On delivering the trunk he was handed a so-called and entitled "uniform express receipt," a copy of which was introduced in evidence. It was signed by the company's agent but not by plaintiff, who was allowed to testify over objection that he never read this receipt and had no knowledge of its contents. The form used is conceded to be the same as the form of express receipt filed by defendant with the Michigan railroad commission. Several different sizes and styles of type are used in printing the form of this receipt.

Above the receipt proper appears in small type the following:

"The company will not pay over $50, in case of loss, or 50 cents per pound, actual weight, for any shipment in excess of 100 pounds, unless a greater value is declared and charges for such greater value paid."

The receipt itself is as follows:

"AMERICAN RAILWAY EXPRESS CO.    (3000)
              (Incorporated)               (1-19)
          "Detroit, Mich...............191..
    "Received from....I. E. Mosier....subject to the Classifications and Tariffs in effect on the date hereof, .................... one trunk .................... value herein declared by shipper to be........dollars.
      (See footnote.)
    "Consigned to ..........I. E. Mosier...........
At....Harbor Beach, Michigan....Charges ..Collect ............War Tax

Which the Company agrees to carry upon the terms and conditions printed on the back hereof, to which the shipper agrees, and as evidence thereof accepts and signs this receipt.

.............................
              Shipper.
      ..............F. Simpson........
                "For the Company."

The last three lines of the receipt and the footnote below it are close lined in yet finer print, the latter reading as follows:

"NOTE.—The Company's charge, except upon ordinary live stock, is dependent upon the value of the property, as declared or released by the shipper. If the shipper desires to release the value to $50 for any shipment of 100 pounds or less, or not exceeding fifty cents per pound, actual weight, for any shipment in excess of 100 pounds, the value may be released by inserting 'not exceeding $50,' or 'not exceeding fifty cents per pound,' in which case the company's liability is limited to an amount not exceeding the value so declared or released."

The "terms and conditions" cover the back of the paper with 12 paragraphs of close lined matter in fine print. Paragraph No. 2 being as follows:

"2. In consideration of the rate charged for carrying said property, which is dependent upon the value thereof, and is based upon an agreed valuation of not exceeding fifty dollars for any shipment of 100 pounds or less, and not exceeding fifty cents per pound, actual weight, for any shipment in excess of 100 pounds, unless a greater value is declared at the time of shipment, the shipper agrees that the company shall not be liable in any event for more than fifty dollars for any shipment of 100 pounds or less, or for more than fifty cents per pound, actual weight, for any shipment weighing more than 100 pounds, unless a greater value is stated herein. Unless a greater value is declared and stated herein the shipper agrees that the value of the shipment is as last above set out and that the liability of the company shall in no event exceed such value."

Defendant was permitted, against the objection that such evidence was incompetent, irrelevant and immaterial, to introduce the classifications and tariffs filed with the State commission and in force at the time of this shipment, by which it appeared that the so-called "primary rate" between Detroit and Harbor Beach was 99 cents per 100 pounds. A portion of a paragraph of the classification introduced reads as follows:

"Rates named in tariffs governed by this classification, except as to ordinary live stock, are dependent upon and vary with the declared or released value of the property, and except as to  *  *  * [immaterial], are based upon property declared to be of, or released to, a value not exceeding $50 for any shipment of 100 pounds or less, or not exceeding fifty cents per pound actual weight for any shipment in excess of 100 pounds. When the declared or released value exceeds that above stated, except as to paintings,  *  *  * the rates are 10 cents greater for each $100 or fraction thereof in excess of the value stated above."

A witness of defendant, familiar with tariffs, testified that the rates as shown by the tariff and classification increased 10 cents for each $100 additional valuation, and the primary rates from Detroit to Harbor Beach being 99 cents on a 100-pound package not

exceeding $50 in value, the tariff on the same package valued at $150 would be $1.09. He also testified that the primary rate was customarily charged unless a higher value was declared. It was admitted by the respective parties that a proper claim in writing was made by plaintiff within 4 months, and that defendant to liquidate the same had made proper tender of $50 with costs.

At close of the proofs defendant admitted liability of $50 and moved the court for a directed verdict against it to that amount, counsel having stipulated that the weight of the shipment was unascertainable and the uniform express receipt as applied to a shipment in excess of 100 pounds was inapplicable. At the time of making this motion counsel for defendant stated he would concede plaintiff did not read the receipt and the court said:

"Your position, Mr. W........, is simply this: It makes no difference whatever whether plaintiff knew anything about the receipt; whether he read it or did not read it, but the fact that he accepted it, made it a contract, and he assented to everything in the receipt?

"*Mr. W.....:* Yes.   *   *   *

"*The Court:* In other words, it is a question of $50 for plaintiff, or $433.50?

"*Mr. W.....:* Yes, with interest."

After some further discussion the case was taken under advisement by the court and the jury excused. An opinion was thereafter delivered by the court and judgment for plaintiff entered in the sum of $464. In its opinion the court states:

"The case was tried before the court and a jury, but on stipulation in open court, it was agreed that the jury be discharged, the questions presented to be disposed of by the court, the defendant stipulating that if it ultimately appears that any question of fact for the jury was involved it should be treated as estab-

lished by the evidence and resolved in favor of plaintiff."

Defendant's assignments of error are concentrated in its counsel's brief as follows:

"In failure of the circuit judge to direct a verdict against it in a sum not in excess of fifty dollars; in holding that the plaintiff was not bound by all the terms of Exhibit A (its uniform express receipt) ; for the refusal of the court to hold that the contents of the filed tariffs and classifications were not conclusively presumed to have been known to the plaintiff, and the refusal of the court to take testimony as to charges upon 'shipments collect' where no value was declared."

Counsel do not discuss the last assignment of error in their briefs. It relates to the following question asked of one of defendant's express agents: "Q. What charges are collected on 'shipments collect' on which no value is declared?" A formal objection to this as incompetent, irrelevant and immaterial was sustained. No claim was or is made that this term has any different meaning from "charges collect." The question was asked after defendant's expert had been permitted against plaintiff's objection to go fully into the matter of tariffs and classifications, explaining the rates between Detroit and Harbor Beach and the method by which they were arrived at, giving the amounts and stating that the primary rate was always charged unless a higher value was declared. No claim was made or suggested by any one that a higher or different tariff was collected when goods were sent "charges collect." Counsel do not advise us in what way the ruling was prejudicial and we see little force in the assignment of error. We infer and it may be assumed, so far as this controversy is concerned, that the charges were the same at whichever end of the route collected.

The other assignments of error all center to defend-

ant's contention that the receipt given plaintiff constituted a special binding contract limiting its liability to $50 irrespective of the value of the shipment or the circumstances attending it. The undated receipt relied on by defendant was scantily filled out by its agent and handed to plaintiff at the time he shipped his trunk, without explanation, request that he sign it or any intimation of its nature. Had he taken time and pains to read the abundant printed matter appearing on both sides of that paper, on and between lines in type varying in size from large capitals to exceedingly fine print, he would have found at the top above the receipt proper the statement that defendant would not pay over $50 in case of loss unless a greater value was declared, with charges for such greater value paid, and in the body of the receipt under the blank left for inserting the value reference to a footnote which stated that if the shipper desired "to release the value to $50 or less for any shipment of 100 pounds or less   *   *   * the value *may* be released by inserting 'not exceeding $50' or 'not exceeding fifty cents per pound,' in which case the company's liability is limited to an amount not exceeding the value so declared or released." Even before he reached the 12 paragraphs of solid set, fine printed matter which cover the back of the paper; he would be confronted with a question of legal construction of the language already quoted, upon which learned counsel in this case disagree. It is said for defendant that both the headnote and footnote are mere notices of limit of liability and not part of the contract proper, citing *McMillan* v. *Railroad Co.*, 16 Mich. 79; and the notice at the top is emphasized as "clear and free from ambiguity," while counsel for plaintiff emphasize the footnote as made a part of the contract by special reference in the body of the receipt, and say:

"That footnote, if it means anything, means that

the shipper, if he so desires, may release to the value of $50 by inserting 'not exceeding $50.' The inference being that, if the insertion is not made, the liability will not be limited. The value of the goods was not inserted in the body of the receipt, and under those circumstances, disregarding the notice at the top of the receipt, it certainly could not be held that a special contract limiting liability had been entered into without doing violence to the language in the footnote at the bottom of the receipt."

The trial court took the view that the headnote was a mere notice, and said:

"Construing the footnote as a part of the contract, we find that the shipper, if he so desires, may release to the value of $50 by inserting 'not exceeding $50 * * * in which case' the carriers' liability is limited; otherwise, the alternative—common law liability. Any other construction does violence to the language employed.

"A contract relied on as limiting the carrier's common law liability must be unequivocal and unambiguous. Restrictions of a carrier's liability in receipts or bills of lading drawn by them, are for their benefit, are interposed for the purpose of escaping liability which would otherwise be imposed by law, and they should be construed strictly as against the carrier and in favor of the shipper."

As applied to the paper and circumstances under which it was delivered, we fully agree with the rule of construction stated by the trial court in the last paragraph quoted. In the early case of *Michigan Cent. R. Co.* v. *Hale*, 6 Mich. 243, it was stated, on the ground of public policy, that the right of a common carrier to limit its liability by mere notice should not exist.

"The public has a right to insist upon the full common law liability of carriers, unless a contract releasing a company from such liability be clearly shown."

Defendant's contention is that such a contract is

clearly and irrefutably established by the undisputed physical fact of reception and retention of the receipt without objection, from which fact alone a conclusive legal presumption arises that all its terms were known to and accepted by plaintiff as a binding contract between the parties fixing their rights and liabilities.

Plaintiff's contention is that no such presumption arises in this jurisdiction from mere acceptance of such a receipt under such circumstances as shown here, but the burden still rested upon defendant to show by further evidence that it was understandingly received and accepted as a binding contract, or, if any presumption arose from its delivery to plaintiff and retention without protest, it was but a refutable presumption subject to rebuttal, and the undisputed facts of this case clearly establish that it was not so received and accepted. Abundant decisions are to be found in other jurisdictions more or less strongly sustaining both contentions, many of which are cited and discussed by counsel, which we do not review here as we think the rule in this jurisdiction is fairly determinable from our own decisions.

Defendant cites and particularly emphasizes as sustaining its contention *McMillan* v. *Railroad Co., supra, Smith* v. *Express Co.,* 108 Mich. 572, and *D'Arcy* v. *Express Co.,* 162 Mich. 363, while plaintiff cites and mainly relies upon *Michigan Cent. R. Co.* v. *Hale, supra; McMillan* v. *Railroad Co., supra; Farnsworth* v. *Express Co.,* 166 Mich. 676; *Crowley Bros.* v. *Railway Co.,* 185 Mich. 482; *Thurston* v. *Navigation Co.,* 205 Mich. 278.

Both parties cite as supporting authority the *McMillan Case* with quotations from it, which seem in the abstract more or less favorable to the side quoting. In volume of quotation and perhaps in substance, the excerpts as culled from that case may be said to predominate in defendant's favor. The dominant ques-

tion there was, however, whether defendant was liable as a warehouseman or a common carrier and a decision of the trial court in its favor on the ground that its liability as a common carrier had ceased was affirmed on review by an equally divided court.

In *Smith* v. *Express Co.*, *supra*, which in certain statements favors defendant's contention, the court cites the *McMillan Case* as authority for the proposition that receipt of a bill of lading "without objection or insistence upon the common law liability of the carrier, is a contract between the parties," but further states that plaintiff, who did not "pretend he was ignorant of this condition," and his agent, who delivered the package and took the receipt, both testified "that they had frequently, for years, shipped packages by the defendant, and received similar receipts. Both were witnesses and neither testified that he did not know what the receipt contained."

In *D'Arcy* v. *Express Co.*, *supra*, it was found:

"The plaintiff had been in the habit of shipping articles and merchandise by the defendant express company, and defendant had furnished him with a book of receipts to facilitate such shipments. The plaintiff himself filled out the receipt covering the shipment in question in this case and a copy of the same is attached to these findings."

While language found in some of the older decisions of this court can fairly be urged as in harmony with defendant's full contention, we think it may be safely said from the qualifying facts in those cases and the general trend of our decisions that in this jurisdiction the acceptance by the shipper without objection of a receipt prepared as in the instant case and handed him by the carrier, while raising a presumption of knowledge of and consent to the stipulations contained in it, is not conclusive, but, like any presumption of fact, is open to rebuttal. To hold otherwise would in principle necessitate overruling the more recent case

of *Farnsworth* v. *Express Co., supra,* and repudiating the clear conclusion upon that subject in *Crowley Bros.* v. *Railway Co., supra,* in effect overruling that case also. While in the latter case a question of pleading was involved and given importance in the opinion, it was said:

"We think the case is controlled by *Farnsworth* v. *Express Co.,* 166 Mich. 676, where reference is made to the proviso in section 40 of Act No. 300, Pub. Acts 1909 [2 Comp. Laws 1915, § 8148], being the last clause of said section, which reads as follows:

" *'Provided,* That nothing herein contained shall be so construed as to abridge or in any wise lessen the liability of such common carrier as it now is under existing laws.' \* \* \*

"Unless we are to overrule the *Farnsworth Case,* it must be held to be controlling of this question, notwithstanding the rulings of the Supreme Court of the United States in *Boston, etc., Railroad* v. *Hooker,* 233 U. S. 97 (34 Sup. Ct. Rep. 526, L. R. A. 1915B, 450, Ann. Cas. 1915D, 593), and kindred cases relating to the interstate commerce act and its amendments, which latter act differs materially from the Michigan act, above referred to, and contains no such proviso as that above quoted."

As to this defendant points out that section 20 of the interstate commerce act (38 U. S. Stat. p. 1197, chap. 176) contains a proviso of somewhat similar wording, but that proviso has reference to an entirely different subject, limiting itself to "this section" which is devoted exclusively to making the initial carrier liable to the holder of a bill of lading for loss caused by a connecting carrier.

In the *Farnsworth Case* this court said:

"Defendant had and has, under Act No. 300, the right to ascertain the value of the package to be carried, and it became its duty thereupon to charge its regular schedule rates for transportation. Its failure to do this cannot be permitted to defeat plaintiff's right to recover the full value of the package, in the absence of any showing of limitation of liability in

the contract of carriage, or of fraud or deceit on the part of the plaintiff in making the shipment."

A like view is stated in *Adams Express Co.* v. *Stettaners*, 61 Ill. 184, as follows:

"If common carriers desired to deal fairly with the public, it would be very easy for them to require the shipper to specify the value of the merchandise and insert the amount in the receipt, making their charges in proportion to their liability. If the shipper should falsely state the value he could not complain at being held to his own valuation."

We do not regard as of controlling importance the difference in facts urged by defendant, and an examination of the briefs in those cases, as well as the opinions filed, shows that most of the questions raised here were then before the court with the same statutes and largely the same authorities cited.

The judgment of the circuit court is therefore affirmed.

MOORE, C. J., and BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.